UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------- X
PSARA ENERGY, LIMITED         :    Civil Case No.
                              :
       Plaintiff              :
                              :
       -against-              :    ADMIRALTY
                              :
                              :
SPACE SHIPPING, LTD. and      :
GEDEN HOLDINGS, LTD.          :
                              :
       Defendants             :
---------------------------------------------------- X

### ORIGINAL VERIFIED COMPLAINT AND REQUEST FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

Plaintiff PSARA ENERGY, LIMITED (hereinafter "PSARA" or "Plaintiff") submits this, its Verified Complaint and Request for Issuance of Process of Maritime Attachment and Garnishment against SPACE SHIPPING, LTD. (hereinafter "SPACE") and GEDEN HOLDINGS, LTD. (hereinafter "GEDEN") (collectively "Defendants") and for its claim avers and pleads as follows.

### PARTIES, JURISDICTION, AND VENUE

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2.      Plaintiff brings this action to obtain security for maritime claims pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "Rule B"). Plaintiff is seeking an order authorizing process of attachment over property belonging to Defendants, including but not limited to: a London maritime arbitration

1

award and the funds payable thereunder, which SPACE seeks to recognize and enforce against various parties in the District including ST SHIPPING & TRANSPORT PTE LTD. (hereinafter "ST PTE" or "Garnishee"), by means of a Petition to Confirm Arbitration Award (**Exhibit 1** attached hereto)[1]; and any credits or effects of Defendant in the hands of the Garnishee, including but not limited to accounts, debts, dividends, contractual rights, indemnity claims, choses in action, and any intangible property whatsoever of Defendant in the hands of Garnishees up to the amount claimed hereunder.

3. At all times material hereto Plaintiff PSARA was a corporation organized under the laws of the Republic of the Marshall Islands and the registered owner of the Motor Tanker CV STEALTH (hereinafter the "CV STEALTH"), a crude oil tanker vessel registered in Malta.

4. At all times material hereto Defendant SPACE, was, and is, a foreign company organized under the laws of Malta and the bareboat charterer of the CV STEALTH under a bareboat charter party contract dated February 23, 2010 (hereinafter "the bareboat charter"). A copy of the bareboat charter is attached hereto as **EXHIBIT 2.**

5. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1333 because this action arises from a maritime contract – *i.e.*, a charter party in respect of unpaid bareboat charter hire and the damage to the hull and machinery of the CV STEALTH that has caused her condition to be so gravely deteriorated that she cannot be redelivered to Plaintiff in the same condition as on delivery minus fair wear and tear not affecting class as provided under Part II, Clause 3 of the charter party.

---

[1] Filed in this Court under Civil Action No. 3:17-cv-01567-WWE and styled "SPACE SHIPPING LTD., Petitioner, against ST SHIPPING & TRANSPORT PTE LTD., ST SHIPPING & TRANSPORT INC. and GLENCORE INTERNATIONAL AG, as guarantor, Respondents".

6. Venue is proper in this District because the Garnishee is located and can be found in this District. Defendants cannot be found in this District within the meaning of Rule B.

## THE CLAIM OF PSARA AGAINST SPACE AND GEDEN

### *Breach of Maritime Contract*

7. On February 23, 2010, Plaintiff, as owner of the CV STEALTH, and Defendant SPACE, as bareboat charterer, entered into a contract in an amended BARECON 2001 charter party form. GEDEN, the parent company of SPACE, guaranteed its performance.

8. The CV STEALTH was employed by SPACE as a vessel under charter by demise is customarily employed, with the demised charterer providing for the crewing of the vessel, her insurances, her technical management, drydocking and repairing, supplying and provisioning and generally providing all services and things for the bareboat charterer's own commercial exploitation of the vessel. On or about April 10, 2014, SPACE, as demised charterers, time chartered the vessel to ST PTE for approximately twelve (12) months at the hire rate of $14,500 per day.

9. On September 4, 2014, ST PTE sub-chartered the vessel to AS CAPITAL, LTD. (hereinafter "AS CAPITAL") under a voyage charter, for the carriage of a cargo of Venezuelan crude oil as follows: "MINIMUM 50,000 MT CHOPT UP TO FULL CARGO" of "CRUDE OIL, MAX 2 GRADES" from "1-2 SP VENEZUELA, EXCLUDING LAKE MARACAIBO INTENTION GUARANGO (PUERTA [sic] LA CRUZ), VENEZUELA" to a range of ports in AS Capital's option.

10. It was the stated intention of AS CAPITAL, and thus ST PTE, as head charterer, to carry a cargo of up to 400,000 barrels of Venezuelan crude oil from Puerto La Cruz for discharge at a United States crude oil terminal.

11. ST PTE, in an email dated September 4, 2014, ordered the Vessel to sail to Puerto La Cruz, Venezuela to load cargo at the PDVSA (Petróleos de Venezuela, S.A., the Venezuelan state-owned oil and natural gas company) Terminal.

12. Pursuant to the instructions sent by ST PTE to the Vessel, she proceeded to Puerto La Cruz, arriving there on or about September 5, 2014.

13. At Puerto La Cruz, the vessel was directed by the agent of AS CAPITAL to be ready to proceed to berth to load a cargo of crude oil for the account of the voyage charterer AS CAPITAL. However, unbeknownst to Plaintiff, berthing instructions from the supplier of the cargo PDVSA were being delayed and the vessel was not being called to berth.

14. On or about September 13, 2014, the Vessel was boarded by Venezuelan port authorities, members of the Venezuelan National Guard, government lawyers, security officers from PDVSA, the Harbor Master and customs officers. They informed the vessel's master that the purported loading authorization document was not an official PDVSA document.

15. The Vessel was detained in Venezuela at that time, purportedly for being unauthorized to lift a cargo of crude oil from Venezuela and being employed to lift a cargo stolen from PDVSA. She continues to be at Puerto La Cruz up to the filing of this Complaint and, to Plaintiff's knowledge, she has not been cleared to depart, although SPACE contends that the Venezuelan authorities are no longer detaining the vessel since October 3, 2017.

16. After several months following the vessel's detention by the Venezuelan government authorities, SPACE altogether ceased paying the agreed daily charter hire, as it was obliged to do until the redelivery of the vessel, leaving PSARA with no choice but to commence arbitration in London to compel SPACE to pay charter hire.

4

17. Owners were successful in the arbitration in London and they recovered an award for unpaid hire in the amount of $5,272,100.90 together with interest and costs, including legal costs and fees. A copy of the arbitration award recovered by Owners is hereto attached as **EXHIBIT 3.**

18. In seeking enforcement of their arbitration award, and to collect amounts becoming due after its issuance, Owners commenced several proceedings against business entities which are successor corporations of SPACE and GEDEN, its performance guarantor, which eventually resulted in a settlement agreement.

19. The settlement agreement, dated December 8, 2016, provided for payment of not only the amount of the award – save for costs of the arbitration which remain to be taxed by the arbitrators – but also of hires up to December 31, 2016.

20. To allow SPACE and GEDEN an opportunity to obtain an arbitration award against ST PTE of indemnity for sums they paid to Owners in respect of bareboat hires during the detention of the vessel, Owners under the December 8, 2016 agreement, agreed to give SPACE and GEDEN a respite for the hires accruing for the months of January through June 2017. SPACE and GEDEN agreed to deposit in escrow an amount equal to the said outstanding hires from the recovery of the indemnity. SPACE and GEDEN also agreed that if the CV STEALTH continued to remain under detention after June 2017, payment of hire would resume and specifically provided under clause 8(7) of the December 8, 2016 agreement:

> After the said 6-month period has passed (January 2017 through June 2017), if the vessel has not been redelivered to Owners in the meantime, Charterers shall be required to resume timely payment of monthly charter hire falling due thereafter up to the end of 2017. *While such BBC hire continues to be paid in a timely manner Owners shall not pursue any remedies to enforce and/or secure their claims for unpaid charter hire, for the January 2017 – June 2017 period which remains unpaid at that time*, unless the Charterers fail to comply with the Assignment or fail (after due notice) to diligently

pursue their indemnity claims against ST Shipping/Glencore. (*emphases added*).

21. On October 1, 2017, the October installment of bareboat charter hire, which was payable in advance (as all monthly installments of hire are), fell due but neither SPACE or GEDEN have paid to date, despite payment being duly demanded.

22. SPACE and GEDEN having failed to make the October hire payment as contemplated under the December 8, 2016 settlement agreement, leaves Owners free to pursue any remedies to enforce and/or secure their claims for unpaid hire. Owners are about to submit a claim in the London arbitration, which has continual jurisdiction over the claims for the January through June 2017 unpaid hires, interest, legal costs, and costs of the London arbitration, and any other claims arising under the bareboat charter.

23. On or about October 4, 2017, Owners received a notice from SPACE through chartering broker channels, advising that the Venezuelan government released the vessel from detention - after it was detained in Venezuela for some 36 months - and they are arranging to make redelivery of the vessel to Owners within approximately thirty (30) days. Redelivery of the vessel is imminent.

24. Without prejudice to claims that Owners have submitted to the hull and war risks underwriters of the Vessel, Owners contend the vessel has become a constructive total loss under the respective policies of insurance by reason of her three (3) year-long detention by the Venezuelan government, and/or the consequences of such detention to the physical condition of the vessel. Owners anticipate, based on information received, that the vessel has suffered extensive damage and deterioration during said detention, due to her forced idleness for a period of three (3) years and the lack of minimally adequate, rudimentary maintenance, which will cost an extremely

large sum to restore the CV STEALTH to the state and condition she must be restored to trade as a seaworthy tanker vessel once again.

25. Based on information regarding the present condition of the CV STEALTH, which Plaintiff has been able to obtain while the vessel remains un-redelivered and still under the control of SPACE, the vessel is out of class, uninsurable and will require at a minimum, extensive restorative repair work that will include the following items:

1) complete overhauling of all machinery and equipment and extensive renewals of major and miscellaneous spares;

2) extensive piping system renewals, overhauling of valves, sensors and gauges;

3) full hull and deck blasting and extensive steel renewals and recoating;

4) extensive renewal of outfitting, supports, ladders, etc.;

5) extensive steel renewals in cargo and ballast tanks;

6) re-tubing of auxiliary boilers and exhaust gas boilers;

7) overhauling and renewal of cargo system, cargo piping, cargo monitoring and cargo equipment and machinery;

8) steam lines and heating coils renewals;

9) deck machinery overhauling and renewal including cranes and their hydraulic systems;

10) electrical, electronics and automation system service, repair and renewal;

11) extensive rewiring;

12) bridge navigation and communication equipment service and renewals;

13) overhauling, repairs and renewal of steering and shafting system;

14) overhauling, service, repair and renewals of all safety equipment, firefighting systems and appliances, lifesaving equipment etc.;

15) fitting of ballast water treatment system.

Plaintiff reasonably believes that the cost of repairs to the vessel, if she is reparable, and restoring her to the redelivery condition required under the charter party, will exceed the sum of $15,000,000 as estimated in the foregoing.

26. The cost of the repairs estimated in the foregoing do not include the time that will be required to effect the repairs, which is estimated to be approximately 5 months. At the current charter party rate, it is estimated to be 151 days x $10,275 = $1,551,525

27. Redelivery of the vessel in such a deteriorated state of extensive disrepair is a material breach of the bareboat charter, which requires under Part II, clause 15 that, "…the Vessel shall be redelivered to the Owners in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted."

28. The amount of outstanding bareboat charter hire owed by Defendants to Plaintiff for the detention of the vessel beyond her agreed redelivery date is, in accordance with charter party clause 15, the daily basic rate of $9,750 plus 10%, or the daily market rate over the period of the detention; whichever is higher. The higher of the two alternative daily rates is the former, *i.e.* $10,275.

29. Defendants have failed to pay Plaintiff the agreed hire rate over the following months of 2017: January; February; March; April; May; June; and October, *i.e.* a total of 212 days – which, under charter party Part II clause 11, is payable in advance. Accordingly, SPACE is indebted to PSARA in respect of unpaid hire in the sum of $2,178,300.

30. The charter party provides under clause 11(f) that unpaid sums under the charter carry interest at the rate of the 2% over the U.S. $ LIBOR rate, which Plaintiff calculates to be $45,381.00 over the unpaid hire amount for the past 10 months. (2% Over LIBOR is roughly

estimated as 2.5% per annum). The interest Plaintiff anticipates will run on unpaid hire during the 5-month anticipated repair period is estimated, at the same rate, to be $29,091.

31. Plaintiff was awarded costs for the London maritime arbitration under the award already made by the arbitrators, which include fees for their legal representation in the proceedings. Plaintiff anticipates that the costs already incurred in the arbitration, that will be taxed against SPACE, will amount to approximately $500,000. Plaintiff also anticipates submitting further claims in the London arbitration in respect of the charter hire amounts remaining unpaid; its claim for repairs to the vessel; and its unpaid legal costs, additionally totaling the sum of $300,000. Thus, Plaintiff's claim for legal costs in the London arbitration proceedings are estimated to total $800,000.

## APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

32. The Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Doc. 4, Attorney Affidavit of George Gaitas*. Nevertheless, Defendant SPACE has tangible or intangible personal property within the District in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

33. More particularly, ST PTE is an obligor of SPACE, as it is indebted to SPACE in the sum of $7,325,258.42 under the Fourth Partial Final Award made in favor of SPACE against ST PTE. *See* EXHIBIT 1 at ¶¶ 52-56.

34. According to motion papers filed in Civil Action No. 3:17-cv-01567-WWE on behalf of ST PTE by its attorneys, ST PTE was, and is present in the District. By ST PTE's own admission, "ST Shipping PTE is a foreign corporation, organized under the laws of Singapore.

9

(Pet. ¶ 4). ST Shipping PTE is registered to do business in Connecticut with the Connecticut Secretary of State." *See* Civil Action No. 3:17-cv-01567-WWE, Doc. 19-1, at p. 12. A copy is hereto attached as **EXHIBIT 4**.

35. At all times material hereto, ST PTE, with specific reference to the conclusion of the time charter dated April 10, 2014 between itself and SPACE, identified itself in the correspondence as "ST Shipping and Transport Pte Ltd. Stamford Branch: Three Stamford Plaza, 301 Tresser Boulevard, Stamford, Connecticut 06901-3244." Copies of such correspondence are hereto attached as **EXHIBIT 5**.

36. The obligation of ST PTE to pay the arbitration award to SPACE may be attached by process of maritime attachment and garnishment in the hands of ST PTE as security for the claims of Plaintiff PSARA in London maritime arbitration, which are otherwise not secured.

37. Plaintiff has maritime claims against the Defendants arising out of a maritime contract, *i.e.* – the bareboat charter party with GEDEN and SPACE dated February 23, 2010.

38. Thus, Plaintiff calculates the total amount of its claim in arbitration in respect of which it seeks security under this application as follows:

(a) Damages for the deteriorated condition of the vessel on redelivery ................................................................................ $ 15,000,000.00
(b) Unpaid Charter hire......................................................$   2,178,300.00
(c) Unpaid hire during repairs.............................................$   1,551,525.00
(d) Estimated interest on unpaid amounts..............................$        74,472.00
(e) Legal costs of the arbitration .........................................$      800,000.00

**Total Claim..........................................................$ 19,604,297.00**

39. Accordingly, Plaintiff's total claim against Defendants for breach of the maritime contract totals $19,604,297.00.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A. That process in due form of law, according to the practice of this Honorable Court in

10

matters of admiralty and maritime jurisdiction, be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Original Verified Complaint;

B. That since the Defendants cannot be found within this District pursuant to Rule B, all of the assets of the Defendants presently within this District, or assets expected in this District during the pendency of this action, including but not limited to the indebtedness of ST PTE to SPACE in respect of the aforementioned Fourth Arbitration Award, and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D. That judgment be entered against each of the Defendants in the sum of $19,604,297.00 together with interest and costs, and the proceeds of the assets attached be applied in satisfaction thereof;

E. That the Court grant such other and further relief as it deems, just, equitable and proper.

Dated: October 30, 2017

The Plaintiff,
PSARA ENERGY, LIMITED

By:
/s/Stephan Skoufalos
Stephan Skoufalos (ct12809)
SKOUFALOS LLC
300 First Stamford Place, 2E
Stamford, CT 06902
(203) 325 – 9010
(203) 325 – 9011 (fax)

11

*Of Counsel*:

Gaitas, Kennedy & Chalos, P.C.
George A. Gaitas
State Bar No. 24058885
Federal Bar No. 705176
Jonathan M. Chalos
State Bar No. 24097482
Federal Bar No. 3008683
*Pro Hac Vice Applications Forthcoming*
6250 Westpark Dr.
Suite 222
Houston, Texas 77057
Telephone: 281-501-1800
Fax: 832-962-8178
E-mail: gaitas@gkclaw.com
        chalos@gkclaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------- X
PSARA ENERGY, LTD.,              :    Civil Case No.
                                 :
            Plaintiff            :    ECF case
                                 :
       -against-                 :    ADMIRALTY
                                 :
                                 :
SPACE SHIPPING, LTD. and         :
GEDEN HOLDINGS, LTD.             :
                                 :
            Defendants           :
---------------------------------------- X

## VERIFICATION OF COMPLAINT

Pursuant to 28 U.S.C. §1746, Despoina Bacha, declares under the penalty of perjury:

1. I am an individual of sound mind, and have never been convicted of a crime of moral turpitude.

2. I am a citizen of Greece and a resident of Athens and a lawful representative of the Plaintiff in the above action and duly authorized on its behalf to make this verification.

3. I have read the foregoing Verified Complaint and exhibits thereto in the above captioned action and know the contents thereof; and

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed in Athens, Greece this 30 day of October, 2017

_____
Despoina Bacha