# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SPACE SHIPPING LTD.,<br><br>         Petitioner,<br><br>- against -<br><br>ST SHIPPING & TRANSPORT PTE LTD., ST SHIPPING & TRANSPORT INC. and GLENCORE INTERNATIONAL AG, as guarantor,<br><br>         Respondents. | 17 CV     ( )<br><br>**PETITION TO CONFIRM ARBITRATION AWARD** |

## SPACE SHIPPING LTD'S PETITION TO CONFIRM ARBITRATION AWARD

Petitioner Space Shipping Ltd. ( "Petitioner" or "Space Shipping"), pursuant to 9 U.S.C. § 207, files this petition to confirm an arbitration award against Respondent ST Shipping and Transport Pte Ltd. ("ST Shipping Pte"), issued in arbitration proceedings held in London, England (the "London Arbitration"). As detailed more fully herein, the London Arbitration resulted in four arbitration awards: the first award (the "Partial Final Award"), second award (the "Second Partial Final Award"), third award (the "Third Partial Final Award") and fourth award (the "Fourth Partial Final Award", and collectively the "Awards"). In the matter at bar, Petitioner seeks to confirm and enforce the Fourth Partial Final Award and, as incorporated in the Fourth Partial Final Award, the prior awards issued in the London Arbitration against ST Shipping Pte, and also against ST Shipping & Transport Inc. ("ST Shipping Inc.") and Glencore International AG ("Glencore International," together with ST Shipping Pte and ST Shipping Inc., the "Respondents") as alter egos of ST Shipping Pte.

80517231v3

## Nature of Action

1. This is a Petition to enforce a foreign arbitration award issued in England.

2. Petitioner respectfully submits that the instant matter seeks confirmation of the foreign arbitral award under the Court's secondary jurisdiction, following the Second Circuit's recent guidance to litigants on this point in *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 75 (2d Cir. 2017). The relief is sought against the Respondent to the Awards, and two alleged alter ego entities.

## The Parties

3. Petitioner Space Shipping Ltd. is a foreign corporation duly organized and operating under the laws of Malta, with a place of business at Old Bakery Street 198, VLT Valletta, Malta.

4. Respondent ST Shipping Pte is a company organized and existing under the laws of Singapore, with an office at 1 Temasek Avenue, #34-01 Millenia Tower, Singapore 039192. *See* Declaration of Neil A. Quartaro ("Quartaro Decl."), ¶6.

5. ST Shipping Pte is a wholly owned subsidiary of Glencore International. Quartaro Decl. ¶7.

6. ST Shipping Pte conducts business from an office located at 301 Tresser Boulevard, Stamford, CT 06901. *Id.* ¶¶6, 8.

7. Upon information and belief, Respondent ST Shipping Inc. is a company organized and existing under the laws of Switzerland, with an office at Baarmermattstrasse 3, PO Box 660, Baar Switzerland. *Id.* ¶¶14, 15.

8. ST Shipping Inc. is a wholly owned subsidiary of Glencore International. *Id.* ¶16.

9. ST Shipping Inc. conducts business from an office located at 301 Tresser Boulevard, Stamford, CT 06901. *Id.* ¶15.

10. Upon information and belief, Glencore International is a company organized and existing under the laws of Switzerland, with a principal place of business at Baarmermattstrasse 3, CH-6341 Baar, Switzerland. *Id.* ¶¶20, 21.

11. Glencore International conducts business from an office located at 301 Tresser Boulevard, Stamford, CT 06901. *Id.* ¶20.

12. Upon information and belief, at all relevant times ST Shipping Pte, ST Shipping Inc. and Glencore International had common officers, directors, office space, contact information, ownership, intermingled corporate resources and disregarded corporate separateness and form, operating as alter egos of one another, such that they should be treated as a single entity for the purpose of enforcing the arbitration award at hand. *Id.*, *passim.*

## Jurisdiction and Venue

13. This Court has jurisdiction pursuant to 9 U.S.C. § 201 *et seq.*, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "<u>New York Convention</u>"). Under the New York Convention "[a]ny party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The United States and United Kingdom are parties to the New York Convention. "The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

14. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

15. This Court also has admiralty jurisdiction pursuant to F.R.Civ.P. 9(h) because the underlying subject matter is a breach of charter, a maritime contract.

16. This Court has personal jurisdiction over each Respondent pursuant to Conn. Gen. Stat. §52-59b(a). At all relevant times, Respondents transacted business within the State of Connecticut, owned, used or possessed real estate situated within the State, and/or used a computer located within the State.

17. Venue is proper in this District pursuant to 9 U.S.C. §§ 203 and 207, and 28 U.S.C. § 1391(b) and (c).

### The Charter and Vessel Detention

18. As recounted in the London Arbitration[1], by charter dated April 10, 2014 (the "Charter"), Petitioner, as owners, chartered the vessel CV STEALTH (the "Vessel") to Respondent ST Shipping Pte for approximately twelve months at the hire rate of $14,500[2] per day. Attached hereto as Exhibit 1 is a true and correct certified copy of the Charter.

19. The Charter is subject to English law.

20. The Charter contains a mandatory arbitration clause calling for the arbitration of "any dispute" arising under the Charter before the London Maritime Arbitrators Association.

21. The Charter is guaranteed by Glencore International.

22. On September 4, 2014, ST Shipping Pte sub-chartered the Vessel to non-party AS Capital by a voyage charter, for the carriage of a cargo of Venezuelan crude oil as follows: "MINIMUM 50,000 MT CHOPT UP TO FULL CARGO" of "CRUDE OIL, MAX 2 GRADES" from "1-2 SP VENEZUELA, EXCLUDING LAKE MARACAIBO INTENTION GUARANGO

---

[1] The Court is respectfully referred to the findings and conclusions in the Awards, especially the Partial Final Award which contains the majority of factual findings. Exs. 2 (Partial Final Award), 3 (Second Partial Final Award), and 4 (Fourth Partial Final Award). The Third Partial Final Award is not at issue here.

[2] All amounts in U.S. Dollars unless otherwise noted.

(PUERTA [sic] LA CRUZ), VENEZUELA" to a range of ports in AS Capital's option. *See* Ex. 2 (Partial Final Award) ¶8.

23. It was the stated intention of AS Capital, and thus ST Shipping Pte, as head charterer, to carry a cargo of up to 400,000 barrels of Venezuelan crude oil from Puerto La Cruz for discharge at a United States terminal. *Id.* ¶9.

24. ST Shipping Pte, in an email dated September 4, 2014, ordered the Vessel to sail to Puerto La Cruz, Venezuela to load cargo at the PDVSA (Petróleos de Venezuela, S.A., the Venezuelan state-owned oil and natural gas company) Terminal. *Id.* ¶16.

25. Pursuant to the instructions sent by ST Shipping Pte to Petitioner, the Vessel proceeded to Puerto La Cruz, arriving September 5, 2014. *Id.* ¶18.

26. It quickly emerged that the crude oil cargo was not authorized by PDVSA for sale, was not scheduled to be loaded, and was being stolen from PDVSA.

27. On September 13, 2014, the Vessel was boarded by Venezuelan port authorities, members of the National Guard, government lawyers, security officers from PDVSA, the Harbor Master and customs officers. They informed the master that the purported authorization document was not an official PDVSA document. *Id.* ¶24.

28. The Vessel was detained in Venezuela at that time, and remains there through the date hereof.

**The London Arbitration and Awards**

29. Notwithstanding the detention of the Vessel in Venezuela following ST Shipping Pte's instructions to the Vessel to load the cargo there, ST Shipping Pte ceased paying the hire due under the Charter to Petitioner.

30. Petitioner Space Shipping, as disponent owners of the Vessel, subsequently commenced the London Arbitration against ST Shipping Pte, as charterers, pursuant to the terms of the charter party.

31. Space Shipping sought to recover damages from ST Shipping Pte under the indemnity clause contained in the charter party.

32. ST Shipping Pte has taken every opportunity to delay resolution of this matter, raising various spurious arguments and seeking as many procedural delays as possible.

33. The London Arbitration resulted in four (4) partial final awards, of which the "Partial Final Award", "Second Partial Final Award" and "Fourth Partial Final Award" are at issue here.[3]

34. The arbitrator found that "it was the link between the vessel, AS Capital's cargo and this forged document [i.e. the purported PDVSA authorization] which raised the particular interests of the National Guard when they boarded the vessel…" and "the fact that the vessel was the intended means to carry the unauthorized AS Capital cargo, and the consequent possibility that the owners might have been involved in the crimes, [] led to the detention of the vessel…" Ex. 2 ¶¶72, 75.

---

[3] *See* Exs. 2-4.

35. The arbitrator further held "that the detention is the cause of all the subsequent delay because no case of the chain of causation being broken has ever been, or could be, advanced." *Id.* ¶¶72, 75.

36. In summary, the arbitrator concluded that the Vessel's detention was caused by ST Shipping Pte's act, and that the Vessel was on hire during the detention. *See id.* ¶85.

37. In light of the foregoing, and as detailed in the Partial Final Award, the arbitrator concluded that Space Shipping, as owner, was entitled to indemnity under clause 13(a)(ii) of the Charter with ST Shipping Pte, as the detention was a consequence of "irregularities in papers supplied by charterers or their agents." *Id.* ¶¶86, 93.

38. In the Partial Final Award, the arbitrator made numerous findings of fact and law, but reserved judgment on Petitioner's instant indemnity claims pending a further award.

39. The Fourth Partial Final Award, dated May 15, 2017, contains the arbitrator's findings in favor of Petitioner on certain of Petitioner's indemnity claims, but should be read together with the Partial Final Award and the Second Partial Final Award, both of which are referenced in the Fourth Partial Final Award.

40. Several additional matters not resolved in the Partial Final Award were addressed by the arbitrator in the Fourth Partial Final Award.

41. Specifically, in the Fourth Partial Final Award, the arbitrator disposed of ST Shipping Pte's arguments, finding: "[t]he charterers' essential case was based on frustration [of the charterparty]… they said that what is now causing the owners' loss is not their [] original order to load the AS Capital cargo in Venezuela, as I had originally held… but rather that the present continuing detention… is due to the local judges acting entirely unreasonably and contrary to the law…" Ex. 4 (Fourth Partial Final Award) ¶¶2, 3.

42. The arbitrator rejected this argument, noting "[m]ost of the matters relied upon as justifying the charterers' case… were in existence at the time of the [Final Partial Award], and nothing appears to have changed in that respect." *Id.* ¶28.

43. Therefore, the arbitrator concluded that the charterers' defense that the Charter had been frustrated "cannot succeed on the facts." *Id.* ¶31. Further, "the frustration argument cannot succeed simply because the charter has come to an end following the redelivery of the vessel to the owners on 1 April 2015 and thus there is nothing left that can be frustrated… It also seems to be plain that there is no device whereby the charterers' obligations to pay damages for their breach or… to indemnify the owners under clause 13 can be held to be frustrated: those must continue." *Id.* ¶13.

44. The issues held over included potential savings of drydocking costs ("owners might never have to drydock the vessel… in which event they would save something of the order of $1.4 million…") (Ex. 4 ¶39) and expenses related to crewing and insurance.

45. With respect to crew expenses, the arbitrator concluded the owners' claim for crew expenses should be reduced by 45%, a reduction reflected in amounts sought here. *Id.* ¶46. However, with respect to the owners' claims for insurance premiums, the arbitrator found it succeeded in full. *Id.* ¶50.

46. Therefore, ST Shipping Pte was ordered to pay:

   a. Indemnity claim for bareboat hire, plus interest, of $4,374,378.12. *Id.* ¶53.

   b. Operational expenses of $2,950,880.30. (The $3,531,990.53 awarded less a reduction of $581,110.23 as provided for at paragraph 46 of the Fourth Partial Final Award).

47. ST Shipping Pte has appealed the Fourth Partial Final Award on the merits, but has not alleged any of the exclusive defenses to enforcement enumerated in the New York Convention.

48. The Fourth Partial Final Award is fully enforceable in England.

49. Petitioner Space Shipping has made numerous demands for payment of the Fourth Partial Final Award, but ST Shipping Pte has failed to make any payments, notwithstanding the passage of over three months since the Fourth Partial Final Award issued.

50. Petitioner has patiently awaited payment of the Fourth Partial Final Award, but ST Shipping Pte has continued its pattern of delay by failing to pay.

51. Accordingly, the failure to pay a fully enforceable award being willful and unsupported by any meritorious argument, Petitioner also seeks the costs of the instant action, including but not limited to attorneys' fees and the costs and disbursements required to force ST Shipping Pte, and its alter egos, to pay the Fourth Partial Final Award.

**FIRST CAUSE OF ACTION**

52. Petitioner repeats and re-alleges paragraphs 1-51 as if fully set out herein.

53. Respondent ST Shipping Pte is the named respondent on the Awards and is liable for the damages awarded thereunder.

54. The Awards are due and fully enforceable.

55. Respondent ST Shipping Pte has not paid the Awards.

56. Petitioner is entitled to a judgment against ST Shipping Pte in the amount of $7,325,258.42 under the Fourth Partial Final Award pursuant to 9 U.S.C. § 207.

**SECOND CAUSE OF ACTION**

57. Petitioner repeats and re-alleges paragraphs 1-51 as if fully set out herein.

58. Petitioner alleges that ST Shipping Pte, ST Shipping Inc. and Glencore International are alter ego entities that should not be accorded the protections of the corporate form.

59. Petitioner respectfully seeks judgment against ST Shipping Inc. and Glencore International for the same amounts due from ST Shipping Pte.

60. In the alternative, Petitioner is entitled to a judgment against Glencore International, as guarantor, in the amount of $7,325,258.42 under the Fourth Partial Final Award. *See* Ex. 1.

61. Should the alter ego allegations be substantively denied, Petitioner requests, in the alternative, discovery with respect to Petitioner's alter ego allegations.

62. Petitioner is entitled to a judgment against ST Shipping Inc. and Glencore International in the amount of $7,325,258.42 under the Fourth Partial Final Award pursuant to 9 U.S.C. § 207.

Case 3:17-cv-01567-VAB Document 1-1 Filed 09/30/17 Page 10 of 12

WHEREFORE, Petitioner prays that the Court enter an Order:

a) Confirming the Fourth Partial Final Award in its entirety and entering judgment in the amount of $7,325,258.42 against the Respondents;

b) For post-judgment interest at the statutorily prescribed rate;

c) Awarding Petitioner the costs, fees and disbursements incurred in this action; and

d) For such other and further relief as the Court deems appropriate.

Dated: September 19, 2017　　　　　　　　　　　Petitioner Space Shipping Ltd.

By:   /s/Thomas L. Tisdale
Thomas L. Tisdale (CT06793)
Timothy J. Nast (CT28663)
Tisdale Law Offices, LLC
10 Spruce Street
Southport, CT 06890
(203) 254-8474
ttisdale@tisdale-law.com
tnast@tisdale-law.com

OF COUNSEL
Neil A. Quartaro
Celinda J. Metro
Watson Farley & Williams LLP
250 West 55th Street
New York, New York 10019
(212) 922-2200
nquartaro@wfw.com
cmetro@wfw.com

Case 3:17-cv-01567-WWE Document 1-1 Filed 09/19/17 Page 12 of 12