# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SPACE SHIPPING, LTD., | : | |
| | : | Civil No. 3:17-CV-01567-WWE |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| ST SHIPPING & TRANSPORT PTE LTD. | : | |
| ST SHIPPING & TRANSPORT, INC. | : | |
| GLENCORE INTL AG, | : | |
| | : | |
| Respondents. | : | OCTOBER 19, 2017 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE STAY,
<u>PETITION TO CONFIRM ARBITRATION AWARD</u>**

NEUBERT, PEPE & MONTEITH, P.C.
    Simon I. Allentuch (ct21094)
195 Church Street, 13th Floor
New Haven, Connecticut 06510
Tel: (203) 821-2000
Email: sallentuch@npmlaw.com

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
    Peter Behmke (pro hac vice pending)
    Michael P. Jones (pro hac vice pending)
101 Park Avenue
New York, New York, 10178
Tel.: (212) 696-6000
Fax: (212) 697-1559
Email: pbehmke@curtis.com
       mjones@curtis.com

*Attorneys for ST Shipping & Transport
Pte. Ltd. & ST Shipping & Transport Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT .................................................................................................................... 8

I.      **The Petition Should Be Dismissed In Its Entirety**
        **for Lack of Personal Jurisdiction over ST Shipping PTE** ............................. 8

II.      **The Petition Should Be Dismissed**
        **Under the Doctrine of** *Forum Non Conveniens* .............................................. 12

        A.      Space Shipping's Forum Choice
             Should Receive Little or No Deference .................................................. 13

        B.      The English Courts Are an Adequate Forum .......................................... 14

        C.      Private and Public Factors Weigh in Favor of Dismissing the Petition ................ 15

III.      **The Petition Should Be Dismissed as to**
        **ST Shipping Inc. for Lack of Personal Jurisdiction** ...................................... 17

        A.      The Petition Fails to Establish a Basis for Jurisdiction
             over ST Shipping Inc. Pursuant to the Long Arm Statute ..................... 18

        B.      Exercising Personal Jurisdiction Over
             ST Shipping Inc. Would Violate Due Process ...................................... 19

IV.      **The Petition Fails to Allege Facts Stating Claims Against ST Shipping Inc.** ............. 22

        A.      Space Shipping Does Not Allege Facts
             to Demonstrate Fraud or Abuse of the Corporate Form ....................... 23

        B.      Space Shipping Only Alleges Facts Common to Affiliated Companies ............. 25

V.      **In the Alternative, the Court Should Stay**
        **These Proceedings Pending Resolution of the Appeal** ................................... 26

        A.      The General Objectives of Arbitration Favor Granting a Stay ............... 27

        B.      The Status of the Foreign Proceedings Favors a Stay ........................... 27

        C.      The Scrutiny the Fourth Award Will Receive Favors a Stay ................. 28

    D.    The Characteristics of the Foreign Proceeding Favor Neither Party ....................29

    E.    The Balance of Hardships Favors Entry of a Stay .................................................30

    F.    That the Fourth Award is Not Subject
to Enforcement in England Favors a Stay.............................................................30

**CONCLUSION** ....................................................................................................................32

# TABLE OF AUTHORITIES

**Page**

**Cases**

Alstom Brasil Energia e Transporte Ltda. v. Mitsui Sumitomo Seguros S.A.,
No. 15 CIV. 8221 (AKH), 2016 WL 3476430 (S.D.N.Y. June 20, 2016) ............................. 16

Amerbelle Corp. v. Hommel,
272 F. Supp. 2d 189 (D. Conn. 2003) .................................................................................... 10

Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.,
622 F. Supp. 2d 46 (S.D.N.Y. 2009) ...................................................................................... 23

BlueWhale Corp. v. Grand China Shipping Dev. Co.,
722 F.3d 488 (2d Cir. 2013) .................................................................................................... 23

Brown v. Lockheed Martin Corp.,
814 F.3d 619 (2d Cir. 2016) ....................................................................................... 11, 12, 20

Can v. Goodrich Pump & Engine Control Sys., Inc.,
711 F. Supp. 2d 241 (D. Conn. 2010) .................................................................................... 14

Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,
491 B.R. 335 (S.D.N.Y. 2013) .......................................................................................... 23, 25

Caro v. Fid. Brokerage Servs.,
No. 3:14-CV-01028 (CSH), 2015 WL 1975463 (D. Conn. Apr. 30, 2015) ........................... 18

Cerner Middle E. Ltd. v. iCapital, LLC,
No. 3:16-CV-01631-YY, 2017 WL 2579292 (D. Or. June 14, 2017) ................................... 19

Chirag v. MT Marida Marguerite Schiffahrts,
983 F. Supp. 2d 188 (D. Conn. 2013),
aff'd, 604 F. App'x 16 (2d Cir. 2015) .................................................................................... 13

Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.,
801 F. Supp. 2d 211 (S.D.N.Y. 2011) .............................................................................. passim

Daimler AG v. Bauman,
__ U.S. __, 134 S. Ct. 746 (2014) .......................................................................................... 20

De Castro v. Sanifill, Inc.,
198 F.3d 282 (1st Cir.1999) .................................................................................................... 25

Doe v. Del. St. Police,
939 F. Supp. 2d 313 (S.D.N.Y. 2013) .................................................................................... 18

Energy Marine Servs., Inc. v. DB Mobility Logistics AG,
No. CV 15-24-GMS, 2016 WL 284432 (D. Del. Jan. 22, 2016),
appeal dismissed (Aug. 9, 2016) ............................................................................................ 26

Europcar Italia, S.P.A. v. Maiellano Tours, Inc.,
156 F.3d 310 (2d Cir. 1998) ............................................................................................. passim

Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru,
  665 F.3d 384 (2d Cir. 2011).................................................................................. 12, 14

First Inv. Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.,
  858 F. Supp. 2d 658 (E.D. La. 2012),
  aff'd, 703 F.3d 742 (5th Cir. 2012), as revised (Jan. 17, 2013)............................. 22

Fletcher v. Atex, Inc.,
  68 F.3d 1451 (2d Cir.1995)...................................................................................... 26

Forsa v. LIB/GO Travel, Inc.,
  No. CV096006686S, 2014 WL 7462505 (Conn. Super. Ct. Nov. 18, 2014) ........................... 10

Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,
  284 F.3d 1114 (9th Cir. 2002) ................................................................................ 22

Golden Horn Shipping Co. v. Volans Shipping Co.,
  No. 14-CV-2168 (JPO), 2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017) ........................... 14, 17

Goodyear Dunlop Tires Operations, S.A. v. Brown,
  564 U.S. 915 (2011)................................................................................................. 20

Hamann v. Carpenter,
  No. 3:16-CV-00501-VAB, 2017 WL 421646 (D. Conn. Jan. 31, 2017)........................ 9, 22

Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,
  328 F.3d 1122 (9th Cir.2003) .................................................................................. 25

Harris v. Wells,
  832 F. Supp. 31 (D. Conn. 1993) ............................................................................. 9

In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.,
  528 F.Supp.2d 340 (S.D.N.Y. 2007)......................................................................... 28

In re Roman Catholic Diocese of Albany, N.Y., Inc.,
  745 F.3d 30 (2d Cir. 2014)....................................................................................... 20

InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.,
  166 F. Supp. 3d 463 (S.D.N.Y. 2016)................................................................. 27, 28

Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.,
  No. CIV.A. 05-0423, 2005 WL 3533128 (W.D. Pa. Dec. 22, 2005)......................... 31

Kalin v. Xanboo, Inc.,
  526 F. Supp.2d 392 (S.D.N.Y.2007)........................................................................ 25

Kirno Hill Corp. v. Holt,
  618 F.2d 982 (2d Cir. 1980)..................................................................................... 23

Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prod., Inc.,
  821 F. Supp. 2d 498 (D. Conn. 2010)...................................................................... 10

Looney v. SpeeDee Worldwide Corp.,
  No. 3:13CV1442 WWE, 2015 WL 3505711 (D. Conn. June 3, 2015) .................... 21

Louis Dreyfus Co. Freight Asia Pte LTD v. Uttam Galva Metallics Ltd.,
  No. 17 CIV. 2476 (JSR), 2017 WL 2738277 (S.D.N.Y. June 25, 2017).................. 22

M & M Packaging, Inc. v. Kole,
   183 F. App'x 112 (2d Cir. 2006) ............................................................................................ 9

Marczeski v. Kamba,
   No. 3:99CV02479 AWT, 2001 WL 237204 (D. Conn. Feb. 23, 2001) .................................... 9

Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea,
   142 F. Supp. 3d 110 (D.D.C. 2015) ....................................................................... 27, 28, 29, 30

Melgares v. Sikorsky Aircraft Corp.,
   613 F. Supp. 2d 231 (D. Conn. 2009) .................................................................................... 14

Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,
   311 F.3d 488 (2d Cir. 2002) .................................................................................. 12, 13, 15, 16

Murray v. British Broad. Corp.,
   81 F.3d 287 (2d Cir. 1996) ..................................................................................................... 17

New Organics Co. v. Bloomfield Bakers, Inc.,
   No. CV020815943, 2007 WL 1675741 (Conn. Super. Ct. May 23, 2007) ............................. 10

Pollux Holding Ltd. v. Chase Manhattan Bank,
   329 F.3d 64 (2d Cir. 2003) ..................................................................................................... 17

Preferred Display, Inc. v. Vincent Longo, Inc.,
   642 F. Supp. 2d 98 (D. Conn. 2009) ................................................................................ 11, 19

Protegrity Corp. v. Dataguise, Inc.,
   No. 3:13-CV-00715 (VLB), 2014 WL 12690186 (D. Conn. Sept. 3, 2014) ........................... 11

Saudi v. Marine Atl., Ltd.,
   306 F. App'x 653 (2d Cir. 2009) ............................................................................................ 21

Seales v. Panamanian Aviation Co.,
   356 F. App'x 461 (2d Cir. 2009) ............................................................................................ 15

Sonera Holding B.V. v Cukurova-Holding A.S.,
   750 F.3d 221 (2d Cir. 2014) ....................................................................................... 9, 19, 20

Talenti v. Morgan & Brother Manhattan Storage Co.,
   968 A.2d 933 (Conn. App. 2009) ........................................................................................... 12

Waite v. Schoenbach,
   No. 10 CIV. 3439 (RMB), 2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010).............................. 25

Walden v. Fiore,
   __U.S. __, 134 S.Ct. 1115 (2014) .......................................................................................... 21

Waldman v. Palestine Liberation Org.,
   835 F.3d 317 (2d Cir. 2016) ................................................................................................... 21

Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),
   543 B.R. 127 (Bankr. S.D.N.Y. 2016) ................................................................................... 25

Wenzel v. Marriott Int'l, Inc.,
   629 F. App'x 122 (2d Cir. 2015) ............................................................................................ 12

Wilmington Tr. Co. v. Hellas Telecomms., S.à.r.l.,
   No. 12-CV-8686 (JPO), 2016 WL 7339112 (S.D.N.Y. Aug. 4, 2016) .................................... 18

Wilson v. DirectBuy, Inc.,
   821 F. Supp. 2d 510 (D. Conn. 2011) ..................................................................................... 11

WorldCare Corp. v. World Ins. Co.,
   767 F. Supp. 2d 341 (D. Conn. 2011) ..................................................................................... 12

Zeevi Holdings Ltd. v. Republic of Bulgaria,
   No. 09 CIV. 8856 RJS, 2011 WL 1345155 (S.D.N.Y. Apr. 5, 2011),
   aff'd, 494 F. App'x 110 (2d Cir. 2012).................................................................................... 15

**Statutes**

Conn. Gen. Stat. § 33-920 ................................................................................................................. 11

Conn. Gen. Stat. § 33-929 ............................................................................................................ passim

Conn. Gen. Stat. § 52-59b............................................................................................................. 1, 10

**Treaties**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958
   ...................................................................................................................................... 12, 26

Respondents ST Shipping & Transport Pte. Ltd. ("ST Shipping PTE") and ST Shipping & Transport Inc. ("ST Shipping Inc."), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss *Space Shipping Ltd.'s Petition to Confirm Arbitration Award* (the "Petition" or "Pet.") [ECF No. 1].

## PRELIMINARY STATEMENT

Petitioner Space Shipping Ltd. ("Space Shipping") – a foreign corporation organized under the laws of Malta – entered into a Time Charter Party dated April 10, 2014 (the "Charter") with ST Shipping PTE, a company that is incorporated in, and operates out of, Singapore. Space Shipping agreed that the Charter would be governed by English law, and that the Courts of England would have exclusive jurisdiction over any disputes between ST Shipping PTE and Space Shipping, with the only exception being arbitration in London. The Charter expressly provided that any award would be subject to appeal before the High Court of Justice of England and Wales (the "High Court").

In filing this Petition before the U.S. District Court for the District of Connecticut, Space Shipping seeks to circumvent the agreed upon process and enforce an arbitral award that is subject to a pending appeal that is scheduled to be heard on November 7, 2017. The Petition should be dismissed for several reasons.

First, the Petition should be dismissed for lack of personal jurisdiction. Space Shipping invokes Conn. Gen. Stat. § 52-59b(a) as the basis for this Court's jurisdiction, even though that statute does not apply to foreign corporations such as ST Shipping PTE or ST Shipping Inc.[1]

---

[1] Glencore International A.G. ("Glencore International") has not been served with the Petition and Glencore International is not making an appearance before this Court. The returned Summons [ECF No. 14] shows that on October 10, 2017, the Summons and Petition were served on Glencore *Ltd.*, a subsidiary of Glencore International operating in Stamford, Connecticut, and not Glencore International. Glencore Ltd. is not an agent of service for Glencore International.

And Space Shipping's Petition does not allege any facts to satisfy the applicable long-arm statute, Conn. Gen. Stat. § 33-929.

Second, the Petition should be dismissed under the doctrine of *forum non conveniens*. This case concerns an English arbitration, on appeal before an English court, between two non-U.S. companies. To avoid the consequences of the English laws to which Space Shipping agreed to be bound, Space Shipping brought this Petition in the United States. Space Shipping's opportunistic forum choice is entitled to no deference, and the Petition should be dismissed in favor of the forum that the parties agreed to utilize: the Courts of England.

Third, ST Shipping Inc. is based in Switzerland and had no involvement in the alleged acts that gave rise to the award. Therefore, this Court lacks personal jurisdiction over ST Shipping Inc. for the additional reason that Space Shipping cannot establish that this Swiss company is "at home" in Connecticut, as required for general jurisdiction, or that it aimed any relevant activities at the State of Connecticut, as required for specific jurisdiction.

Fourth, the Petition fails to plead *a single fact* necessary to hold ST Shipping Inc. liable for the award, which was issued solely against ST Shipping PTE. Instead, Space Shipping relies on conclusory statements, prohibited mass-pleading, and a handful of factual allegations that only show ST Shipping Inc. and ST Shipping PTE are corporate affiliates. Space Shipping does not—and could not—come close to establishing a prima facie case that ST Shipping Inc. abused the corporate form or perpetrated some fraud against Space Shipping, as required to impose alter ego liability. Accordingly, the Petition should also be dismissed as against ST Shipping Inc. pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a cause of action.

Finally, should this Court decline to dismiss the Petition, it should stay these proceedings pending resolution of the appeal. Indeed, it makes little sense for this Court to consider

confirmation of an award that might be vacated by the proper court of jurisdiction in the near future.

**STATEMENT OF FACTS**

**The Charter and the Arbitration**

ST Shipping PTE entered into the Charter with Space Shipping for the vessel *CV Stealth*. In the Charter, Space Shipping agreed that the Charter "shall be construed and the relations between the parties determined in accordance with the laws of England," and that "[a]ny dispute arising under this [C]harter shall be decided by the English Courts to whose jurisdiction the parties hereby agree." (Pet. Ex. 1 at 11, ¶ 41(a),(b).) Space Shipping also agreed that "[n]otwithstanding the foregoing . . . either party may . . . elect to have any such dispute referred to . . . arbitration," and that "any dispute" in connection with the Charter would "be referred to arbitration in London." (Pet. Ex. 1 at 11 ¶ 41(c), at 49 ¶ 111(a).). Space Shipping further agreed that, after the referenced arbitration took place, "either party may . . . appeal to the High Court on any question of law arising out of an award," or "apply to the High Court to determine any question of law arising in the course of the reference." (Pet. Ex. 1 at 11, ¶ 41(c)(ii)(a),(d).)

After the *CV Stealth* was detained in the Bolivarian Republic of Venezuela ("Venezuela"), Space Shipping invoked the Charter's arbitration provision to assert claims against ST Shipping PTE and Glencore International (Mills-Webb Aff.[2] ¶ 5.) Bruce Harris, who was appointed as the sole arbitrator, declined to exercise jurisdiction over Glencore International on the basis that Glencore International was not a signatory to the Charter, and therefore there was no arbitration agreement between Space Shipping and Glencore International. (Mills-Webb

---

[2] "Mills-Webb Aff." refers to the *Affidavit of Edward Henry Mills-Webb*, which is being submitted contemporaneously with this memorandum.

Aff. ¶¶ 5–6.)  Space Shipping did not name ST Shipping Inc. as a party to the arbitration, and ST Shipping Inc. did not participate in the arbitration.

Between September 2015 and May 2017, Mr. Harris issued two awards in Space Shipping's favor:  one dated September 23, 2015 (the "First Award"), and one dated August 8, 2016 (the "Second Award").  (Mills-Webb Aff. ¶ 8.)  ST Shipping PTE paid both of these awards in full.  (Mills-Webb Aff. ¶¶ 8–9.)

On November 7, 2016, Mr. Harris issued an award in ST Shipping PTE's favor (the "Third Award") for costs incurred regarding the Second Award.  (Mills-Webb Aff. ¶ 10.)  The Third Award remains unpaid by Space Shipping.

After a pause in the proceedings, Space Shipping then applied to Mr. Harris for further relief under the Charter.  (Mills-Webb Aff. ¶ 11.)  A hearing on Space Shipping's request took place in May 2017, and Mr. Harris entered an award dated May 25, 2017 (the "Fourth Award".)

Pursuant to ¶ 41(c)(ii)(a) of the Charter,  ST Shipping PTE initiated an appeal (the "Appeal") of the Fourth Award to the High Court.  (Mills-Webb Aff. ¶ 12.)  As a matter of English law and procedure, an English court would decline to confirm or enforce the Fourth Award unless and until the Appeal is decided.  (Mills-Webb Aff. ¶¶ 17–29.)  The hearing on the Appeal is scheduled for November 7, 2017, and ST Shipping PTE expects that a decision will be rendered before the end of 2017.  (Mills-Webb Aff. ¶¶ 15-16.)  In the event that ST Shipping PTE's Appeal is successful, the Fourth Award would be vacated and ST Shipping PTE would face no liability to Space Shipping.  (Mills-Webb Aff. ¶¶ 28-29.)

## Jurisdictional Facts

Space Shipping is a foreign corporation organized under the laws of Malta, with a place of business in Valetta, Malta.  (Pet. ¶ 3.)

ST Shipping PTE is a foreign corporation, organized under the laws of Singapore. (Pet. ¶ 4.)  ST Shipping PTE is registered to do business in Connecticut with the Connecticut Secretary of State.  (Quartaro Decl. ¶ 6.)[3]  As discussed in Arg. § I(A), below, this fact precludes Space Shipping from establishing personal jurisdiction over ST Shipping PTE under Connecticut's long-arm statute, Conn. Gen. Stat. §33-929(e).

ST Shipping Inc. is a company organized and existing under the laws of Switzerland, with its head office and principal place of business in Switzerland.  (Pet. ¶ 7; Quartaro Decl. Ex. 8 at 2; Ex. 9 ¶ 2.)

In its Petition, Space Shipping fails to allege any connection between ST Shipping Inc., on the one hand, and this state, on the other.  The Petition does not allege that ST Shipping Inc. has any bank accounts, books or records, or any other property in the United States.  Instead, Space Shipping relies upon minimal, conclusory allegations that are both misleading and rebutted by the very documents cited by Space Shipping as support.

For example, the Petition asserts in conclusory fashion that ST Shipping Inc. "conducts business from an office located at 301 Tresser Boulevard," (Pet. ¶ 9), citing paragraph 15 of the Quartaro Declaration.  But the Quartaro Declaration contains no such facts.  Paragraph 15 of the Quartaro Declaration cites three exhibits:  Exhibits 8, 10, and 19.  Not one of these documents states that ST Shipping Inc. does any business in Connecticut.  Exhibit 8 is a Lloyds Intelligence report, which correctly states that ST Shipping Inc.'s head office is in Switzerland.  (Quartaro Decl. Ex. 8 at 2.)  Exhibit 10, a Westlaw Company Investigator Report, also only lists Swiss addresses.  Exhibit 19, an email chain, does not mention ST Shipping Inc. at all.  Rather, the

---

[3]     "Quartaro Declaration" or "Quartaro Decl." refers to the *Declaration of Neal A. Quartaro, Esq.*, dated September 19, 2017 [ECF No. 2].

email chain refers exclusively to ST Shipping PTE, and attaches the Standing Instructions to Masters that were issued by ST Shipping PTE. (Quartaro Decl. Ex. 19 at 31.)

Nor does the Petition allege that ST Shipping Inc. took any actions that were directed towards Connecticut, much less that those actions were related to this dispute or gave rise to the awards issued by Mr. Harris. The awards do not mention ST Shipping Inc. (Pet. Exs. 2–4). And, the only acts or actors that the Quartaro Declaration identifies with any relationship to Connecticut are associated with ST Shipping PTE, not ST Shipping Inc.

In particular, the Quartaro Declaration identifies just three documents, Exhibits 19, 27, and 29, that concern the Vessel and have even a vague reference to Connecticut. (Quartaro Decl. ¶¶ 34-37, 56-60.) But none of these documents mentions ST Shipping Inc.[4] Further, the Quartaro Declaration and the documents cited therein all show that the individuals who were involved in the operation of the Vessel were acting on behalf of ST Shipping PTE, not ST Shipping Inc. (See, e.g., Quartaro Decl. Ex. 19 at 27, 31 (listing Maciejewski and Schulten as contacts, and referring exclusively to ST Shipping PTE); Quartaro Decl. Ex. 22 (identifying Marcus Souza as a Vessel Operator for "ST SHIPPING AND TRANSPORT PTE LTD").)

Neither the Petition nor the Quartaro Declaration points to a single other purported fact to establish the necessary connection between ST Shipping Inc. and Connecticut such that ST Shipping Inc. may be subject to the jurisdiction of this Court.

---

[4] Specifically, Exhibit 19 references ST Shipping PTE 19 times but does not refer to ST Shipping Inc. (Quartaro Decl. Ex. 19 at 2, 3, 14, 25, 31, 37, 39, 44, 50, 52, 55-56). Exhibit 27 does not mention ST Shipping Inc. Exhibit 29 refers to ST Shipping PTE 7 times (Quartaro Decl. Ex. 29 at 4, 6, 8, 11, 12, 13, 16), but ST Shipping Inc. none.

**Alter-Ego Facts**

The Petition also fails to allege any facts to show that ST Shipping Inc. should be held liable for the Fourth Award as a purported alter ego of ST Shipping PTE.  The only facts pleaded are:

- ST Shipping PTE and ST Shipping Inc. share a common address in Connecticut, which as stated above is unsupported (Pet. ¶¶ 6, 9; Quartaro Decl. ¶ 15);

- ST Shipping PTE and ST Shipping Inc. are commonly owned by Glencore International (Quartaro Decl. ¶¶ 7, 16);

- ST Shipping PTE and ST Shipping Inc. share some (but not all) directors  (Quartaro Decl. ¶¶ 18-19);

- ST Shipping PTE and ST Shipping Inc. do not have their own separate websites (Quartaro Decl. ¶¶ 26-30.)

These facts – an allegedly shared office location, common ownership, some common directors, and a shared website – are typical of many companies within a corporate family. There are no facts that suggest abuse of the corporate form, that any of these companies is a sham or a shell, or that there has been some fraud or injustice perpetrated against Space Shipping by ST Shipping Inc.

Indeed, the one factual allegation asserted by Space Shipping to suggest that ST Shipping Inc. had any connection at all to this dispute is refuted by the very document it relies upon. Space Shipping alleges that "communications . . . surrounding the operation of the Vessel . . . show that ST Shipping Pte, ST Shipping Inc., and Glencore operated interchangeably at all operative times." (Quartaro Decl. ¶ 32).  The sole purported link between ST Shipping Inc. and the "operation of the Vessel" is alleged as follows:

> Among the documents attached to the August 4 Email was one entitled 'ST Global Ops.xls' (the "ST Global Ops Document") which bears a logo stating "ST Shipping and

Transport"; it is unclear if this document refers to Shipping
Pte, ST Shipping Inc. or some other entity.

(Quartaro Decl. ¶ 35 (citing Quartaro Decl. Ex. 19).))

Putting aside that a purportedly ambiguous logo in a single document comes nowhere

close to establishing an alter ego relationship, the cited exhibit containing the ST Global Ops

Document explicitly refers to ST Shipping PTE *19 times*, (Quartaro Decl. Ex. 19 at 2, 3, 14, 25,

31, 37, 39, 44, 50, 52, 55-56), including in its subject line (reading: "RE:  MT CV Stealth / *ST

Shipping and Transport Pte Ltd*,"), and a statement on the first page that someone "pls pass *St

Shipping and Transport pte ltd* standing instructions to masters."  (Quartaro Decl. Ex. 19 at 2

(emphasis added).)  The same document does not mention ST Shipping Inc., or even the words

"Inc." or "Incorporated," once.[5]

The remaining purported "alter ego" facts do not mention ST Shipping Inc. at all.  They

refer only to other corporate affiliates and legal entities that are not the subject of the Petition.[6]

## ARGUMENT

**I.    The Petition Should Be Dismissed In Its Entirety for
       Lack of Personal Jurisdiction over ST Shipping PTE**

The Petition should be dismissed because there is no basis for personal jurisdiction over

ST Shipping PTE.  Because this Court lacks jurisdiction to confirm the Fourth Award and reduce

it to a judgment against ST Shipping PTE, there is also no basis for any action seeking to enforce

---

[5]    In similar vein, the Quartaro Declaration asserts that Marcus Souza's name is listed in the Global
Ops Document, but "does not provide Mr. Souza's title, nor reveal whether Mr. Souza works for ST
Shipping Pte or ST Shipping Inc. or some other entity."   (Quartaro Decl. ¶ 41.)  Yet the very
next paragraph of the Declaration concedes that Mr. Souza's Linkedin profile lists him as a "Vessel
Operator (ST SHIPPING AND TRANSPORT PTE LTD)."  (Id. ¶ 42.)

[6]    By way of example, the Quartaro Declaration identifies several individuals, such as Messrs.
Maciejewski, Schulten, and Souza, as well as Marc Ross, that are employees of Glencore Ltd., a distinct
legal entity.  (Quartaro Decl. ¶¶ 38, 40, 42).  The Quartaro Declaration also references "Company –
Glencore UK Ltd."  (See, e.g., Quartaro Decl. ¶¶ 43, 47.)  Glencore Ltd. and Glencore UK Ltd. are
separate companies and have not been named as respondents to this Petition.

such a judgment against ST Shipping Inc. (or any other entity).  The Petition should therefore be dismissed in its entirety.

Before a court can confirm an arbitral award against an entity, the court must have a sufficient basis to exercise jurisdiction over that entity.  See, e.g., Sonera Holding B.V. v Cukurova-Holding A.S., 750 F.3d 221, 227 (2d Cir. 2014) (reversing district court's decision to confirm arbitration award absent personal jurisdiction).

 "The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendants." M & M Packaging, Inc. v. Kole, 183 F. App'x 112, 114 (2d Cir. 2006) (citation omitted).  Where, like here, discovery has not begun, the plaintiff must at least "allege facts constituting a prima facie showing of personal jurisdiction."  Id. (citation omitted.) "[C]onclusory allegations are not enough to establish personal jurisdiction."  Marczeski v. Kamba, No. 3:99CV02479 AWT, 2001 WL 237204, at *1 (D. Conn. Feb. 23, 2001) (citing Harris v. Wells, 832 F. Supp. 31, 34 (D. Conn. 1993)).

Therefore, in order to survive a Rule 12(b)(2) motion to dismiss, the plaintiff must allege two sets of non-conclusory facts.  First, the plaintiff must plead facts showing that the "defendant is subject to jurisdiction under the law of the forum state," — here, Connecticut.  Sonera Holding B.V., 750 F.3d at 224.  Second, the plaintiff must plead facts showing that "the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."  Id.  See also Hamann v. Carpenter, No. 3:16-CV-00501-VAB, 2017 WL 421646, at *3 (D. Conn. Jan. 31, 2017) (granting Rule 12(b)(2) motion to dismiss where plaintiff failed to put forth "non-conclusory allegations that merited jurisdiction under either Connecticut's long-arm statute or the due process clause").

As regards ST Shipping PTE, the Petition fails the initial inquiry.  The Petition asserts a single basis for this Court to exercise personal jurisdiction over ST Shipping PTE:  Conn. Gen. Stat. § 52-59b(a).  (Pet. ¶ 16.)  However, Conn. Gen. Stat. § 52-59b(a) applies only to suits against any "nonresident individual, foreign partnership or foreign voluntary association," not foreign **corporations** such as ST Shipping PTE.  See, e.g., Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 195 (D. Conn. 2003) (holding that § 52-59(b) does not apply to foreign corporations); Forsa v. LIB/GO Travel, Inc., No. CV096006686S, 2014 WL 7462505, at *3 n.3 (Conn. Super. Ct. Nov. 18, 2014) ("Connecticut's longarm statute for individuals, foreign partnerships, and voluntary associations, General Statute § 52–59b . . . does not apply to foreign corporations . . .").

Even if Space Shipping had identified the proper long-arm statute, Conn. Gen. Stat. § 33-929, the facts alleged would not permit the Court to exercise jurisdiction over ST Shipping PTE.  Space Shipping is incorporated in and operates out of Malta (Pet. ¶ 3), and therefore cannot establish personal jurisdiction pursuant to § 33-929(f).  See, e.g., Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prod., Inc., 821 F. Supp. 2d 498, 502 (D. Conn. 2010) ("To establish jurisdiction over a foreign corporation pursuant to section 33-929(f), a plaintiff must be 'a resident of this state' or 'a person having a usual place of business in this state.'"); New Organics Co. v. Bloomfield Bakers, Inc., No. CV020815943, 2007 WL 1675741, at *1 (Conn. Super. Ct. May 23, 2007) ("The clear and unmistakable language, unambiguous, states that a foreign corporation can be sued in this state only by a resident of the state or by a person having a usual place of business in this state.").

Space Shipping also cannot establish personal jurisdiction pursuant to § 33-929(e). Section 33-929(e) provides:

Every foreign corporation which transacts business in this state in
violation of section 33-920 shall be subject to suit in this state upon
any cause of action arising out of such business.

Section 33-920 provides, in relevant part, that a "foreign corporation . . . may not transact business in this state until it obtains a certificate of authority from the Secretary of the State." Therefore, § 33-929(e) "authorizes personal jurisdiction over a foreign corporation where: (1) the corporation has transacted business in Connecticut without having obtained a certificate of authority from the Secretary of State; and (2) the cause of action arises out of such business." Preferred Display, Inc. v. Vincent Longo, Inc., 642 F. Supp. 2d 98, 104 (D. Conn. 2009) (citations omitted). "The definition of 'transacting business' for the purposes of this statute is extremely narrow," and does not include "transacting business in interstate commerce." Protegrity Corp. v. Dataguise, Inc., No. 3:13-CV-00715 (VLB), 2014 WL 12690186, at *10 n.3 (D. Conn. Sept. 3, 2014).

Space Shipping concedes that ST Shipping PTE has a certificate of authority to transact business in Connecticut (Quartaro Decl. ¶ 8, Ex. 6), which means that ST Shipping PTE is not subject to personal jurisdiction under § 33-929(e). See, e.g., Wilson v. DirectBuy, Inc., 821 F. Supp. 2d 510, 521 (D. Conn. 2011) ("To establish jurisdiction under § 33-929(e), a plaintiff must establish that the defendant corporation *transacted business* in Connecticut *without a valid certificate* of authority from the Secretary of State.") (emphasis added); Brown v. Lockheed Martin Corp., 814 F.3d 619, 634 (2d Cir. 2016) ("[t]he statute thus provides for service of process on foreign corporations, and appears designed to confer . . . specific jurisdiction [over an] . . . *unregistered corporation* 'subject to suit' in the state with respect to causes of action 'arising out of' its business in the state") (emphasis added).

Because this Court lacks personal jurisdiction over ST Shipping PTE, the Petition should be dismissed in its entirety.[7]

## II.    The Petition Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*

Even if Space Shipping could establish personal jurisdiction over ST Shipping PTE (it cannot), the Petition should also be dismissed under the doctrine of *forum non conveniens*.

The doctrine of *forum non conveniens* "finds its roots in the inherent power of the courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," and therefore permits dismissal "even when jurisdiction is authorized." Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 498 (2d Cir. 2002) ("Monde Re"). *Forum non conveniens* is a procedural defense to a confirmation proceeding under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"). See Monde Re, 311 F.3d at 496 (dismissing action to confirm arbitration award under New York Convention on *forum non conveniens* grounds); Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru, 665 F.3d 384, 393 (2d Cir. 2011) (similar).

In the Second Circuit, courts utilize a three-step analysis in determining whether to dismiss a claim pursuant to *forum non conveniens*. Wenzel v. Marriott Int'l, Inc., 629 F. App'x 122, 124 (2d Cir. 2015). "The first level of inquiry . . . is to determine what deference is owed to a plaintiff's choice of forum." Monde Re, 665 F.3d at 498 (citations and marks omitted). The

---

[7]    ST Shipping PTE and ST Shipping Inc. are aware of Talenti v. Morgan & Brother Manhattan Storage Co., 968 A.2d 933 (Conn. App. 2009), which held that a party who registers to do business in Connecticut consents to personal jurisdiction in the state. However, Talenti's holding is incompatible with the plain language of the statute and has been rejected by the Second Circuit and this Court. See, e.g., Lockheed Martin Corp., 814 F.3d at 636 ("We hazard that the Appellate Court erred in reading the registration and agent appointment statutes as constituting corporate consent . . . ."); WorldCare Corp. v. World Ins. Co., 767 F. Supp. 2d 341, 356 (D. Conn. 2011) ("Conn. Gen.Stat. § 33–929(a) is merely a consent to service of process statute . . . .") (citations omitted).

second inquiry is to "determine whether an alternative forum exists." Id. at 499 (citations omitted).  The third inquiry is to balance the private and public interests implicated in the choice of forum. Id. at 500.  In this case, all three steps point towards dismissing the Petition.

**A.    Space Shipping's Forum Choice Should Receive Little or No Deference**

In general, "[a] domestic petitioner's choice of its home forum receives great deference, while a foreign petitioner's choice of a United States forum receives less deference." Id. at 498. Thus, in the Second Circuit, the courts will use a "sliding scale," and "the more it appears that the petitioner's choice of a U.S. forum was motivated by forum-shopping reasons—such as the inconvenience and expense to the respondent resulting from litigation in that forum—the less deference the petitioner's choice commands, and, consequently, the easier it becomes for the respondent to succeed on a forum non conveniens motion by showing that convenience would better be served by litigating in another country's courts." Id.  (marks omitted).  Factors pointing toward forum shopping include both:  (i) "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case"; and (ii) "the inconvenience and expense to the defendant resulting from litigation in that forum."  Chirag v. MT Marida Marguerite Schiffahrts, 983 F. Supp. 2d 188, 195 (D. Conn. 2013), aff'd, 604 F. App'x 16 (2d Cir. 2015).

Space Shipping's decision to bring the Petition in this forum runs afoul of all of these considerations.  Space Shipping is a foreign corporation duly organized under the laws of, and operating from, Malta, and has asserted no other connection to the United States.  (Pet. ¶ 3.) This alone entitles Space Shipping's choice of forum to a lower level of deference.  Monde Re, 311 F. 3d. at 498.

Moreover, Space Shipping filed the Petition before this Court for improper forum shopping reasons.  Under English law, Space Shipping would be precluded from seeking to confirm or enforce the Fourth Award in an English court unless and until the Appeals are

resolved.  (Mills-Webb Aff. ¶¶ 19–29.)  Nevertheless, Space Shipping brought its Petition to

confirm the award in this forum without making even a single statement explaining why it has

brought this action in the United States.

These facts, coupled with Space Shipping's lack of "any bona fide connection" to the

United States, indicate strongly that the Petition is but a part of Space Shipping's "litigation

strategy."  Can v. Goodrich Pump & Engine Control Sys., Inc., 711 F. Supp. 2d 241, 259 (D.

Conn. 2010); see also Melgares v. Sikorsky Aircraft Corp., 613 F. Supp. 2d 231, 245 (D. Conn.

2009) (when "a foreign plaintiff chooses a United States forum, a plausible likelihood exists that

the selection was made for forum-shopping reasons") (citations omitted); Golden Horn Shipping

Co. v. Volans Shipping Co., No. 14-CV-2168 (JPO), 2017 WL 3535002, at *4 (S.D.N.Y. Aug.

16, 2017) ("Given the lack of ties to the United States, the at-best shaky reasoning given by

Golden Horn for its choice of forum, and the likely tactical advantage Golden Horn has under

U.S. maritime law, the Court affords little deference to Golden Horn's choice of forum.");

Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd., 801 F. Supp. 2d 211,

219 (S.D.N.Y. 2011) (limiting deference granted to American citizen's choice of U.S. forum in

"action to confirm arbitration awards issued in London for breaches of a contract negotiated in

Hong Kong for the shipment of goods from Brazil to China").

Space Shipping's selection of this forum is therefore entitled to no deference.

**B.  The English Courts Are an Adequate Forum**

The existence of an alternative forum to confirm the Fourth Award (the Courts of

England) further favors dismissing the Petition under the doctrine of *forum non conveniens*.

Indeed, under the applicable law, "[a]n alternate forum is adequate if the defendants are

amenable to service of process there, and if it permits litigation of the subject matter of the

dispute."  Figueiredo, 665 F.3d at 390.

ST Shipping PTE consented to the jurisdiction of the English Courts, (Pet. Ex. 1 at 11,

¶ 41(b)), and the United Kingdom is a signatory and party to the New York Convention.

(Pet. ¶ 13.)  Such facts are more than sufficient to establish the English Courts as an adequate

alternative forum for Space Shipping to pursue its confirmation action.  See Zeevi Holdings Ltd.

v. Republic of Bulgaria, No. 09 CIV. 8856 RJS, 2011 WL 1345155, at *7 (S.D.N.Y. Apr. 5,

2011), aff'd, 494 F. App'x 110 (2d Cir. 2012) (finding Bulgaria is an adequate forum because it

"is a signatory nation to the New York Convention and, as such, is required to provide a forum to

hear confirmation proceedings of foreign arbitral awards") (citing Seales v. Panamanian Aviation

Co., 356 F. App'x 461, 464 (2d Cir. 2009)); Constellation Energy, 801 F. Supp. 2d at 220

("Although the United Kingdom . . . may or may not provide remedies identical to those

available in New York," the United Kingdom permits "enforcement of arbitration awards," and

therefore is an "adequate alternative forum[]").

### C.    Private and Public Factors Weigh in Favor of Dismissing the Petition

Finally, the third step of the *forum non conveniens* analysis is to consider the private and

public interest factors.  These factors favor having this petition heard in the English Courts.

#### 1.    The Private Factors

In evaluating the private interest factors, courts consider the "the relative ease of access

to sources of proof; availability of compulsory process for attendance of unwilling, and the cost

of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be

appropriate to the action; and all other practical problems that make trial of a case easy,

expeditious and inexpensive.  In applying these factors, the court should focus on the precise

issues that are likely to be actually tried, taking into consideration the convenience of the parties

and the availability of witnesses and the evidence needed for the trial of these issues." Monde

Re, 311 F. 3d. at 500.

Here, the private interest factors weigh in favor of conducting this litigation in the English Courts. The Fourth Award that Space Shipping seeks to confirm was issued in the United Kingdom pursuant to English law. (Pet. Exs. 2-4.) All of the parties' counsel, who have been involved in the arbitration from day one, are likewise in the United Kingdom. No other forum could have easier access to the proof required to evaluate the propriety of the Fourth Award. Cf. Alstom Brasil Energia e Transporte Ltda. v. Mitsui Sumitomo Seguros S.A., No. 15 CIV. 8221 (AKH), 2016 WL 3476430, at *7 (S.D.N.Y. June 20, 2016) (private factors tilted towards New York forum where litigants had already conducted arbitration in that forum).

> 2.   The Public Factors

Consideration of the relevant "public factors" likewise supports dismissal for *forum non conveniens*. The "public factors" include "the administrative difficulties associated with court congestion; the imposition of jury duty upon those whose community bears no relationship to the litigation; the local interest in resolving local disputes; and the problems implicated in the application of foreign law." Monde Re, 311 F.3d at 500. Three of these factors, in particular, support dismissal on foreign non conveniens grounds.

First, court congestion considerations favor dismissal. At this moment, the Appeal of the Fourth Award is before the High Court, (Mills-Webb Aff. ¶¶ 12–16.), and there is no evidence that court congestion would be more of a problem in England than it is here. See, e.g., Monde Re, 311 F.3d at 500-01 (public interest factors weighed in favor of dismissal where "[c]ourt congestion is no more a problem in Ukraine than it is here, and there is no reason why localized matters should not be determined by the courts of the locale bearing the most significant contacts with them").

Second, this case is not local, and there is no local interest in the dispute.  This case concerns an arbitration award issued in England, (see Pet. Exs. 2-4), corporations that are not incorporated in the United States and whose officers and directors are located abroad (Quartaro Decl. Ex. 3), and underlying events that took place primarily in Venezuela (Pet. ¶¶ 23–28.)  Or in other words, this Petition has but "the most attenuated American connection."  Murray v. British Broad. Corp., 81 F.3d 287, 293 (2d Cir. 1996); see also Golden Horn Shipping Co, 2017 WL 3535002, at *6 (public interest factors weighed in favor of dismissal when case centered on whether a foreign company acted in a way that its corporate protections should be disregarded); Constellation Energy, 801 F. Supp. 2d 211 (United Kingdom, where arbitration awards were issued, and Hong Kong, where contract was negotiated and executed, had greater connections than United States in petition to confirm arbitration award).

Third, under the Charter, any issues concerning the enforceability of the award are required to be decided under English law, (Pet. Ex. 1 at 11, ¶ 41(a)), which supports the English courts resolving the issue in the first instance.  See, e.g., Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 76 (2d Cir. 2003) ("[O]wing to the fact that the overwhelming majority of plaintiffs' claims necessitate the application of English law, the trial court concluded that choice of law considerations strongly tipped in favor of litigation in England.").

All of the factors are met, and the Court should therefore dismiss the Petition on *forum non conveniens* grounds.

III.    **The Petition Should Be Dismissed as to
ST Shipping Inc. for Lack of Personal Jurisdiction**

In addition to the above reasons, which require dismissal of the Petition in its entirety, the Petition should be dismissed as to ST Shipping Inc. for lack of personal jurisdiction.

A.    **The Petition Fails to Establish a Basis for Jurisdiction over
ST Shipping Inc. Pursuant to the Long Arm Statute**

The Petition fails to establish that ST Shipping Inc. is subject to personal jurisdiction

under the applicable long-arm statute, Conn. Gen. Stat. §33-929(e), because it pleads no facts to

show that ST Shipping Inc.:  (i) transacted business in Connecticut, or that (ii) Space Shipping's

cause of action arises out of such transactions.

The entirety of the Petition's jurisdictional allegations are in paragraph 16, which reads in

full:

> This Court has personal jurisdiction over each Respondent
> pursuant to Conn. Gen. Sta. § 52-59b(a).  At all relevant times,
> Respondents transacted business within the State of Connecticut,
> owned, used or possessed real estate situated within the State,
> and/or used a computer located within the State.

This allegation is wholly inadequate to support a finding of personal jurisdiction.  It simply

recites the elements of the ***inapplicable*** jurisdictional statute that Space Shipping seeks to

invoke.  See, e.g., Caro v. Fid. Brokerage Servs., No. 3:14-CV-01028 (CSH), 2015 WL 1975463,

at *11 (D. Conn. Apr. 30, 2015) (granting Rule 12(b)(2) motion to dismiss where jurisdictional

allegations were conclusory).

Moreover, the allegation utilizes prohibited group pleading, referring only to

"Respondents" without specifically identifying which of these companies supposedly did

anything in Connecticut.  (Pet. ¶ 16.)  See, e.g., Doe v. Del. St. Police, 939 F. Supp. 2d 313, 332

(S.D.N.Y. 2013) (granting motion to dismiss because "whatever may be said about [plaintiff's]

generalized claims about [defendants] collectively, [plaintiff has] offered nothing by way of a

specific allegation of [the individual defendant's] contacts" with Connecticut); Wilmington Tr.

Co. v. Hellas Telecomms., S.à.r.l., No. 12-CV-8686 (JPO), 2016 WL 7339112, at *11 (S.D.N.Y.

Aug. 4, 2016) (dismissing action to enforce judgment against putative alter-egos because

collective descriptions of named defendants were insufficient to establish personal jurisdiction over individual entity).

This failure to allege facts sufficient to establish personal jurisdiction over ST Shipping Inc. under Conn. Gen. Stat. § 33-929 requires dismissal of the Petition as to ST Shipping Inc. See, e.g., Preferred Display, Inc., 642 F. Supp. 2d at 104 (dismissing claim for failing to plead adequately under § 33-929(e)).

## B.   Exercising Personal Jurisdiction Over ST Shipping Inc. Would Violate Due Process

The Petition should be dismissed as to ST Shipping Inc. for the additional reason that exercising personal jurisdiction over it would not comport with due process. See, e.g., Sonera Holding B.V., 750 F. 3d at 226–27 (reversing district court's decision to confirm arbitration award because exercising personal jurisdiction over respondent would violate due process); Cerner Middle E. Ltd. v. iCapital, LLC, No. 3:16-CV-01631-YY, 2017 WL 2579292, at *2 (D. Or. June 14, 2017) (granting motion to dismiss petition to enforce arbitration award under the New York Convention where plaintiff failed to establish personal jurisdiction against defendant).

In considering this constitutional question, "[t]here are two types of personal jurisdiction: specific and general." Sonera Holding B.V., 750 F.3d at 225. General jurisdiction, which permits a court to adjudicate all claims against a corporation, "exists only when a corporation's contacts with a state are "so 'continuous and systematic' as to render it essentially at home in the forum State." Id. (citations and marks omitted). In contrast, specific or conduct-linked jurisdiction depends on an "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." Id.

Space Shipping's Petition fails to allege facts sufficient to exercise jurisdiction over ST Shipping Inc. under either theory.

> 1.      ST Shipping Inc. Lacks Sufficient Contacts to
>          Connecticut to Support a Finding of General Jurisdiction

General jurisdiction "exists only when a corporation's contacts with a state are so 'continuous and systematic' as to render it essentially at home in the forum State." Id.  As recently stated by the Supreme Court, a corporation is ordinarily deemed to be "at home" only in the state of its principal place of business and of its place of incorporation.  Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 754 (2014).

The Petition concedes that ST Shipping Inc. has its principal place of business and place of incorporation in Switzerland.  (Pet. ¶¶ 7, 10; Quartaro Decl. Ex. 8 at 2; Ex. 9 ¶ 2.)  And the Petition fails to allege any facts that would otherwise indicate that ST Shipping Inc. is "at home" in Connecticut.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 928–29 (2011) (no general jurisdiction over defendant that had no place of business, employees, or bank accounts in the forum, was not registered to do business in the forum, and did not manufacture products in the forum); Lockheed Martin Corp., 814 F.3d at 628–29 (no general jurisdiction in Connecticut over corporation, even though corporation was registered to do business in Connecticut and generated over $150 million in revenue from Connecticut operations); Sonera Holding B.V., 750 F.3d at 226 (no personal jurisdiction to confirm arbitration award against entity that was organized under the laws of Turkey, with operations, properties, and assets predominantly in Tukey); In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 40 (2d Cir. 2014) (no general jurisdiction over defendant that had no office, files, management, place of business, or bank accounts in the forum state); Saudi v. Marine Atl., Ltd., 306 F. App'x 653, 655 (2d Cir. 2009) (no general jurisdiction over defendant that had no office, bank account,

property, or employees in the forum); <u>Looney v. SpeeDee Worldwide Corp.</u>, No. 3:13CV1442

WWE, 2015 WL 3505711, at *3 (D. Conn. June 3, 2015) (granting Rule 12(b)(2) motion to

dismiss for lack of general jurisdiction where defendant was "not incorporated, headquartered or

registered to do business in Connecticut; it maintains no facilities in Connecticut; and it retains

no employees in Connecticut.").  Accordingly, Space Shipping has failed to make a prima facie

showing that either of the Affiliates is subject to general jurisdiction in Connecticut.

2.      ST Shipping Inc. Did Not Direct Any Relevant Activities
<u>Towards Connecticut for the Court to Exercise Specific Jurisdiction</u>

The Petition also fails to allege facts to show that the Court may exercise specific

personal jurisdiction over ST Shipping Inc.  "The inquiry whether a forum State may assert

specific jurisdiction over a nonresident defendant focuses on the relationship among the

defendant, the forum, and the litigation.  For a State to exercise jurisdiction consistent with due

process, the defendant's suit-related conduct must create a substantial connection with the forum

State.  The relationship between the defendant and the forum must arise out of contacts that the

defendant himself creates with the forum."  <u>Waldman v. Palestine Liberation Org.</u>, 835 F.3d 317,

335 (2d Cir. 2016) (citing <u>Walden v. Fiore</u>, __ U.S. __, 134 S.Ct. 1115, 1121 (2014)).

Here, the Petition does not identify ***any action*** taken by ST Shipping Inc. in Connecticut.

The Quartaro Declaration fares no better.  The only alleged actions identified in the Quartaro

Declaration with any connection to Connecticut were taken by Matthew Maciejewski, Alex

Schulten, Marcus Souza, and Matt Ross (Quartaro Decl. ¶¶ 36-42, 56-59), none of whom are

associated with ST Shipping Inc.  (<u>See, e.g.</u>, Quartaro Decl. Ex. 19 at 27, 31 (listing Maciejewski

and Schulten as contacts, and referring exclusively to ST Shipping PTE); Quartaro Decl. Ex. 22

(identifying Marcus Souza as a Vessel Operator for "ST SHIPPING AND TRANSPORT PTE

LTD"); Quartaro Decl. ¶ 57 (Ross is identified as an employee of Glencore Ltd).

- 21 -

Therefore, Space Shipping cannot meet its burden to make a prima facie showing that ST Shipping Inc. is subject to specific personal jurisdiction in Connecticut.  See, e.g., Hamann, 2017 WL 421646, at *7 (granting motion to dismiss where plaintiff failed to allege that defendant did anything to avail himself of the forum); Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123–24 (9th Cir. 2002) (affirming district court's dismissal of petition to confirm arbitration award where petitioner failed to allege that its claims arose from defendant's conduct directed or related to forum state); First Inv. Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd., 858 F. Supp. 2d 658, 672 (E.D. La. 2012), aff'd, 703 F.3d 742 (5th Cir. 2012), as revised (Jan. 17, 2013) (petitioner seeking to confirm arbitration award failed to adequately allege specific jurisdiction when it failed to allege the cause of action was related to any purposeful contact by the respondents).

Accordingly, the Petition lacks any allegations that could serve as the basis for the Court to exercise either general or specific jurisdiction over ST Shipping Inc.  For this additional reason, the Petition should be dismissed as to ST Shipping Inc.

## IV.   The Petition Fails to Allege Facts Stating Claims Against ST Shipping Inc.

The Petition should also be dismissed against ST Shipping Inc. because it fails to allege any facts suggesting that ST Shipping Inc. should be held liable for the Fourth Award as a purported alter ego of ST Shipping PTE.

Because this Court sits in admiralty (Pet. ¶ 15), the Court should "apply federal common law when examining corporate identity."  Constellation Energy, 801 F. Supp. 2d at 223 (citations omitted); see also Louis Dreyfus Co. Freight Asia Pte LTD v. Uttam Galva Metallics Ltd., No. 17 CIV. 2476 (JSR), 2017 WL 2738277, at *3 (S.D.N.Y. June 25, 2017) (applying federal common law to veil-piercing claim asserted in admiralty) (citing BlueWhale Corp. v.

Grand China Shipping Dev. Co., 722 F.3d 488, 495–500 (2d Cir. 2013)).  "Under federal common law, courts will veil pierce only in 'extraordinary circumstances,' and must find either fraud or that a defendant 'so dominated and disregarded its alter ego's corporate form that the alter ego was actually carrying on the controlling party's business instead of its own." Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 349 (S.D.N.Y. 2013) (citations and marks omitted).  Relationships that are typical of corporate affiliates will not suffice to pierce the corporate veil.  Id. at 351.

Accordingly, to state an alter-ego claim, Space Shipping was required to plead facts to show that "an alter ego was used to 'perpetrate a fraud' or was 'so dominated' and its corporate form so 'disregarded' that the alter ego 'primarily transacted [another entity's] business rather than [its] own corporate business.'"  Constellation Energy, 801 F. Supp. 2d at 223 (quoting Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980)).  Conclusory allegations are not enough.  See Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46, 53–54 (S.D.N.Y. 2009) (granting Rule 12(b)(6) motion to dismiss alter ego claims to confirm foreign arbitration award where plaintiff made "only conclusory allegations . . . to support its alter ego theory of liability"); Constellation Energy, 801 F. Supp. 2d at 224 (granting motion to dismiss petition to confirm arbitration award where petition made only conclusory alter-ego claims).

Space Shipping has completely failed to meet its burden.

### A.  Space Shipping Does Not Allege Facts to Demonstrate Fraud or Abuse of the Corporate Form

There is not a single fact alleged in either the Petition or the Quartaro Declaration that suggests ST Shipping PTE was somehow used by ST Shipping Inc. to perpetuate a fraud, or that ST Shipping PTE "primarily transacted another entity's business rather than its own."

<u>Constellation Energy</u>, 801 F. Supp. 2d at 233 (marks omitted).  This is dispositive of any alter ego claim.

The only alleged link between ST Shipping Inc. and the *CV Stealth* or this dispute is Space Shipping's conclusory assertion that "communications . . . surrounding the operation of the Vessel . . . show that ST Shipping Pte, ST Shipping Inc., and Glencore operated interchangeably at all operative times."  (Quartaro Decl. ¶ 32.)  As stated above, the sole communication cited to support this allegation is an email chain which attached the "ST Global Ops Document," which Space Shipping alleges is "unclear" as to whether it "refers to ST Shipping Pte, ST Shipping Inc. or some other entity."  (Quartaro Decl. ¶ 35.)  While that lack of clarity in a single document hardly establishes "interchangeable" operations, the cited email chain explicitly refers to ST Shipping PTE ***19 times*** and leaves no doubt about which entity was involved.  (<u>See</u> Quartaro Decl. Ex. 19 at 2, 3, 14, 25, 31, 37, 39, 44, 50, 52, 55-56).

The Quartaro Declaration also complains that Marcus Souza's name is listed in the Global Ops Document, but "does not provide Mr. Souza's title, nor reveal whether Mr. Souza works for ST Shipping Pte or ST Shipping Inc. or some other entity."  (Quartaro Decl. ¶ 41.)  Yet the very next paragraph of the Declaration concedes that Mr. Souza's Linkedin profile lists him as a "Vessel Operator (ST SHIPPING AND TRANSPORT PTE LTD)."  (<u>Id.</u> ¶ 42.)  Regardless, the fact that one document did not provide the employment status of a particular ST Shipping PTE employee provides no basis to impose alter ego liability on ST Shipping Inc.

There is not a single pleaded fact that suggests fraud, abuse of the corporate form, or even any involvement by ST Shipping Inc. in the underlying dispute with Space Shipping.  The alter ego claim against ST Shipping Inc. should therefore be dismissed.

## B.    Space Shipping Only Alleges Facts Common to Affiliated Companies

The remaining facts alleged by Space Shipping demonstrate only that ST Shipping PTE and ST Shipping Inc. are members of the same corporate family, and provide no basis for alter ego liability.  Courts have routinely rejected similarly pleaded alter ego claims.

Space Shipping alleges that ST Shipping PTE and ST Shipping Inc. share a common address in Connecticut, which is unsupported.  (Pet. ¶¶ 6, 9; Quartaro Decl. ¶¶ 6, 15.)  The remaining allegations – *i.e.*, that ST Shipping Inc. and ST Shipping PTE have the same corporate parent (Quartaro Decl. ¶¶ 7, 16), that they share some common directors (Quartaro Decl. ¶¶ 18–19), or that they are not delineated on the Glencore.com website to counsel's satisfaction (Quartaro Decl. ¶¶ 26–30) – similarly do not provide any basis to pierce the corporate veil between these legally separate entities.  Courts routinely reject alter ego claims based on nearly identical pleadings.  See Waite v. Schoenbach, No. 10 CIV. 3439 (RMB), 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) ("allegations that [d]efendants 'operate at the same location and share employees, officers, owners, and bank accounts', without more, are insufficient to pierce the corporate veil") (citing Kalin v. Xanboo, Inc., 526 F. Supp.2d 392, 404 (S.D.N.Y.2007) (allegations of a common address, common ownership, and common principals, without more, are insufficient to plead piercing the corporate veil)); Weisfelner v. Blavatnik (In re Lyondell Chem. Co.), 543 B.R. 127, 145 (Bankr. S.D.N.Y. 2016) (common ownership and overlap of directors and officers is a normal business practice of a multi-national corporation) (citing De Castro v. Sanifill, Inc., 198 F.3d 282, 283 (1st Cir.1999); Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir.2003)); Capmark Fin. Grp. Inc., 491 B.R. at 350 (granting motion to dismiss veil-piercing claims, even though plaintiffs pointed to defendants' website referring to different "business segments") (citing Fletcher v. Atex, Inc., 68

F.3d 1451, 1460–61 (2d Cir.1995)); <u>Energy Marine Servs., Inc. v. DB Mobility Logistics AG</u>,

No. CV 15-24-GMS, 2016 WL 284432, at *3 (D. Del. Jan. 22, 2016), appeal dismissed (Aug. 9,

2016) (allegations that subsidiary and corporate parent shared common branding, trademarks,

internet domain, and overlapping personnel and departments were insufficient).

     Those are the only facts concerning ST Shipping Inc. that Space Shipping has pleaded.

None of these facts come anywhere close to meeting the high standard for establishing that the

ST Shipping Inc. should be held liable as a purported alter ego of ST Shipping PTE.

**V.    In the Alternative, the Court Should Stay**
**These Proceedings Pending Resolution of the Appeal**

     Should the Court decide to not dismiss the Petition for any reason, the Court should

nevertheless stay this action pending the resolution of the Appeal.  It appears Space Shipping has

only sought the assistance of this Court because it cannot – as a matter of English law – confirm

the Fourth Award in the country of primary jurisdiction.  (Mills-Webb Aff. ¶¶ 17-29.)  This

gamesmanship should not be countenanced.

     Article VI of the New York Convention permits the Court to stay these proceedings

pending resolution of the appeal.  Specifically, Article VI states:

> If an application for the setting aside or suspension of the award
> has been made to a competent authority [of the country in which,
> or under the law of which, that award was made], the authority
> before which the award is sought to be relied upon may, if it
> considers it proper, adjourn the decision on the enforcement of the
> award and may also, on the application of the party claiming
> enforcement of the award, order the other party to give suitable
> security.

In determining whether to stay an action to confirm an arbitration award pursuant to Article VI,

courts in the Second Circuit consider the factors set forward in <u>Europcar Italia, S.P.A. v.</u>

<u>Maiellano Tours, Inc.</u>, 156 F.3d 310, 317-18 (2d Cir. 1998).  Considering each factor

demonstrates that, at the very least, the Petition should be stayed.

## A.      The General Objectives of Arbitration Favor Granting a Stay

The first <u>Europcar</u> factor requires the court to consider "the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." <u>Id.</u> at 317.  This factor favors granting a stay.

In <u>Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea</u>, 142 F. Supp. 3d 110, 114 (D.D.C. 2015), the court confronted facts almost identical to this case.  Just like here, the petitioners sought to confirm an award had been entered but was subject to appeal under the parties' arbitration agreement.  <u>Id.</u>  The court granted the respondent's motion for a stay, explaining that "while a stay would immediately delay the resolution of the parties' dispute, it would still likely be shorter than the possible delay that would occur if this Court were to confirm the award and the [respondent were to] then set it aside."  <u>Id.</u> (citations and marks omitted).  The court went on to stress that because the arbitration agreement at issue provided for appeals (just as the Charter does here):  "<u>Europcar's</u> first factor weighs in favor of affording the [appellate court] the opportunity to complete its review of the arbitral award before this Court considers whether to confirm and enforce it."  <u>Id.</u>  <u>See also</u> <u>InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.</u>, 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016) (because "there would assuredly be duplication and delay from pursuing this enforcement proceeding" the "way to avoid duplication is to await the decision of the French courts as to whether the Award should be annulled").

Thus, the first <u>Europcar</u> factor favors entry of a stay.

## B.      The Status of the Foreign Proceedings Favors a Stay

The second <u>Europcar</u> factor requires consideration of "the status of the foreign proceedings and the estimated time for those proceedings to be resolved."  <u>Europcar</u>, 156 F.3d at 317.  In this case, the status of the foreign proceedings favors a stay because ST Shipping PTE

has already filed its appeal and submitted papers in support, a hearing has been set for November 7, 2017, and a final result is expected by the end of the year.  (Mills-Webb Aff. ¶¶ 12-16.)  See, e.g., Getma Int'l, 142 F. Supp. 3d at 115-116 (holding that "second Europcar factor also weighs in favor of granting a stay" where parties had already filed written submissions, and there was a "likely possibility that the [appellate court] would render a decision well within a year"); InterDigital Commc'ns, Inc., 166 F. Supp. 3d at 472 (second factor favored entry of a stay when respondent "acted promptly to have the Award annulled").

### C.     The Scrutiny the Fourth Award Will Receive Favors a Stay

The third Europcar factor requires consideration of "whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review."  Europcar, 156 F.3d at 317.

This factor weighs in favor of staying the Petition, because England is the "seat of the arbitration, and therefore a primary jurisdiction under the New York Convention."  InterDigital Commc'ns, Inc., 166 F. Supp. 3d at 472.  Thus, the High Court – where the Appeal is pending – can "apply the specific grounds for refusing to enforce the Award[s] found in Article V of the [New York] Convention, and can also rely on any relevant provisions of local law."  Id. at 473.  Meanwhile, this Court can "only rely on the limited grounds available in Article V."  Id.  See also Getma Int'l, 142 F. Supp. 3d at 115-116 (holding that slight preference for factor 3 should be given where appeal could result in annulment of award) (citing In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co., 528 F.Supp.2d 340, 361 (S.D.N.Y. 2007)).  Because the Fourth Award will be subject to greater scrutiny before the High Court, this Court should stay these proceedings so as to avoid a situation where it confirms the award, only to have the Fourth Award mooted by the High Court's subsequent decision.

### D.      The Characteristics of the Foreign Proceeding Favor Neither Party

The fourth Europcar factor requires consideration of the characteristics of the foreign

proceedings including:

> a.      whether they were brought to enforce an award
> (which would tend to weigh in favor of a stay) or to
> set the award aside (which would tend to weigh in
> favor of enforcement)
>
> b.      whether they were initiated before the underlying
> enforcement proceeding so as to raise concerns of
> international comity;
>
> c.      whether they were initiated by the party now
> seeking to enforce the award in federal court; and
>
> d.      whether they were initiated under circumstances
> indicating an intent to hinder or delay resolution of
> the dispute.

Europcar, 156 F.3d at 317.

Applied here, these factors are inconclusive.  ST Shipping PTE initiated the Appeal

(which weighs against granting a stay), but did so before Space Shipping brought its Petition

(which weighs in favor of the stay).   See, e.g., Getma Int'l, 142 F. Supp. 3d at 116-17 (holding

that fourth Europcar factor favored neither party where respondent challenged award before

petition to confirm award was filed).  Moreover, because the Charter expressly permitted appeals

of the Fourth Award to the High Court (Pet. Ex. 1 at 11, ¶41(c)), filing the Appeal cannot be

considered evidence that ST Shipping PTE is attempting to delay Space Shipping's confirmation

of the Fourth Award.  Id.  ("[T]here is no indication that Guinea initiated the annulment

proceeding to hinder or delay the resolution of this dispute—Guinea merely exercised its right to

post-arbitration review as provided for in the Concession Agreement.") (citation omitted).

Therefore, the fourth Europcar factor favors neither party.

### E. The Balance of Hardships Favors Entry of a Stay

The fifth <u>Europcar</u> factor requires consideration of the "balance of the possible hardships to each of the parties, keeping in mind that . . . award should not be enforced if it is set aside or suspended in the originating country." <u>Europcar</u>, 156 F.3d at 318.

This factor favors a stay. Indeed, there would be "very real harm to [ST Shipping PTE if the court] were to confirm the award, [Space Shipping] were [to] take action to execute on the judgment, and the foreign court were later to determine that the award was improper." <u>Getma Int'l</u>, 142 F. Supp. 2d at 118. (marks omitted). Moreover, "premature confirmation and enforcement of the award would essentially eviscerate [ST Shipping PTE's] bargained-for right to have the arbitral award reviewed by the [High Court]." <u>Id.</u>

Space Shipping cannot complain that it faces any real hardship. The only hardship averred in the Petition is that Space Shipping has faced delay enforcing the Fourth Award that is subject to appeal. (Pet. ¶ 50.) That delay is the "natural consequence of the parties' agreement," <u>Getma Int'l</u>, 142 F. Supp. 2d at 119, which expressly provided ST Shipping PTE with a right to appeal the Fourth Award. (Pet. Ex. 1 at 11, ¶41(c).)

### F. That the Fourth Award is Not Subject to Enforcement in England Favors a Stay

The final <u>Europcar</u> factor for consideration is "any other circumstances that could tend to shift the balance in favor of or against adjournment." 156 F. 3d. at 318. Here, Space Shipping has brought its Petition to confirm the Fourth Award, even though it may not, as a matter of English law, enforce the Fourth Award until the Appeal is decided. (Mills-Webb Aff. ¶ 17–29.) These circumstances shift the balance heavily in favor of a stay. Simply put, Space Shipping should not be permitted to utilize this forum to do that which is unavailable in the forum in which it agreed to arbitrate its claims. <u>See, e.g.</u>, <u>Getma Int'l</u>, 142 F. Supp. 2d at 118-19 (granting

stay where "arbitral award is currently unenforceable . . . while the annulment petition is pending," which "counsels against confirming and enforcing an arbitral award under circumstances where the states subject to the jurisdiction of the [annulment body] themselves can do neither"); Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp., No. CIV.A. 05-0423, 2005 WL 3533128, at *3 (W.D. Pa. Dec. 22, 2005) ("the court finds it especially significant that under French law, defendant's appeal of the Arbitral Award automatically stayed execution of the award in that jurisdiction").

In sum, five of the six Europcar factors favor entry of a stay, and the sixth is inconclusive. Accordingly, should the Court decide not to dismiss the Petition, it should stay these proceeding spending the outcome of the Appeal.

## **CONCLUSION**

For the reasons stated above, the Court should dismiss the Petition or, in the alternative,

stay consideration of the Petition pending the conclusion of the Appeal.

NEUBERT, PEPE & MONTEITH, P.C.

/s/ Simon I. Allentuch
    Simon I. Allentuch (ct21094)
195 Church Street, 13th Floor
New Haven, Connecticut 06510
Tel: (203) 821-2000
Email: sallentuch@npmlaw.com

*Attorneys for ST Shipping & Transport*
*Pte. Ltd. & ST Shipping & Transport Inc.*

**OF COUNSEL:**

CURTIS, MALLET-PREVOST,
    COLT & MOSLE LLP
    Peter Behmke (pro hac vice pending)
    Michael P. Jones (pro hac vice pending)
101 Park Avenue
New York, New York, 10178
Tel.: (212) 696-6000
Fax: (212) 697-1559
Email: pbehmke@curtis.com
       mjones@curtis.com

## <u>CERTIFICATION</u>

I hereby certify that on October 19, 2017 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Simon I. Allentuch_____
Simon I. Allentuch