UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PSARA ENERGY, LTD,
    Plaintiff,

v.

SPACE SHIPPING, LTD,
GEDEN HOLDINGS, LTD
    Defendants.

No. 3:17-cv-01811(VAB)

**Ruling and Order On Motion To Vacate Maritime Attachment**

PSARA Energy, LTD ("Plaintiff") filed a Verified Complaint on October 30, 2017, seeking attachment of SPACE Shipping and Geden Holdings's ("Defendants" or "SPACE") property located within the District of Connecticut. *See Compl.*, ECF No. 1. Specifically, Plaintiff sought attachment of a debt owed by a third-party, ST Shipping and Trading Pte. Ltd. ("ST Shipping"), to SPACE arising from an arbitration proceeding in London.

Currently pending before the Court is ST Shipping's motion to release the maritime attachment under Rule E(f)(4) of the Supplement Rules. Because the Court holds that it lacks personal jurisdiction over ST Shipping and, therefore, the debt is not within the District of Connecticut, ST Shipping's motion is **GRANTED**. The attachment will be **VACATED.**

I. **Factual and Procedural History**

PSARA is a corporation organized under the laws of the Republic of the Marshall Islands. Compl. ¶ 3. SPACE Shipping, one of the defendants in this matter, is a foreign company organized under the laws of Malta. *Id.* at ¶ 4.1

1

On February 23, 2010, the parties entered into an agreement for the Defendants to charter Plaintiff's crude oil tanker, the CV STEALTH. *Id*. Plaintiff alleges that Defendants sub-chartered the vessel to a third party, who sailed it to Venezuela with the intention of loading the tanker with crude oil. *Id*. at ¶¶ 9, 10. Upon arrival in the Venezuelan port of Puerto La Cruz, Plaintiff alleges that the "Vessel was detained . . . purportedly for being unauthorized to lift a cargo of crude oil from Venezuela and being employed to lift a cargo stolen" from the Venezuelan state oil company. *Id*. at ¶ 14-16.

Venezuelan authorities released the vessel on October 3, 2017. Plaintiff alleges, however, "due to her forced idleness" for several years without maintenance, "the vessel has suffered extensive damages and deterioration . . . ." *Id*. at ¶ 24. Plaintiff alleges that the vessel is "out of class, uninsurable" and will require numerous repairs that "will exceed the sum of $15,000,000." *Id*. at ¶ 25.

Plaintiff alleges that delivery of the vessel "in such a deteriorated state of extensive disrepair" is a material breach of the bareboat charter that the parties signed. *Id*. at ¶ 27. In addition to the cost of repairs, Plaintiff alleges that Defendants failed to make payments owed for the hire of the vessel, owe attorney's fees for an arbitration brought in London as well as interest, and owe damages for the time it will take to repair the vessel. *Id*. at ¶¶ 26-31. The total claim equals $19,604,297.00. *Id*. at ¶ 39.

The parties entered into arbitration in London for the unpaid hire amount of $5,272,100.90. *Id*. at ¶ 17. Following the arbitration award, the parties pursued a settlement agreement addressing enforcement of that award. *Id*. at ¶¶ 18-22. Plaintiff alleges that the Defendants failed to make payments under the settlement agreement and therefore the Plaintiff is "about to submit a claim in the London arbitration, which has continual jurisdiction over the

claims for the January through June 2017 unpaid hires, interest, legal costs, and costs of the London arbitration, and any other claims arising under the bareboat charter." *Id*. at ¶ 22.

Plaintiff then filed a Verified Complaint in this Court on October 30, 2017 and sought the attachment of an arbitration award between the Defendants and a third party: ST Shipping. Plaintiff alleged that the debt owed by ST Shipping to SPACE in relation to the award was intangible property within the meaning of Rule B and — based on a lawsuit filed by SPACE in this District to enforce the award against ST Shipping — that property existed within the District of Connecticut's jurisdiction.

On November 1, 2017, this Court held that "Plaintiff has met its initial burden in seeking attachment under Rule B, and the Court will authorize process of attachment and garnishment." Ruling On Attachment, ECF No. 15. The Court subsequently issued a writ of garnishment.

ST Shipping filed a motion seeking to vacate the garnishment under Rule(E)(4)(f) of the Supplement Rules and sought a hearing. *See* Motion to Release Maritime Attachment, ECF No. 18. The Court then scheduled and held a hearing on November 17, 2017, at which SPACE Shipping appeared for the first time. SPACE maintained that Plaintiff failed to inform the Court about developments in the London arbitration and therefore argued the Verified Complaint should be dismissed or, alternatively, reduced to account for those developments. ST Shipping argued that this Court lacked jurisdiction over the debt because this Court lacked personal jurisdiction over ST Shipping. Alternatively, it sought Court approval to transfer the funds it owed to an escrow account in London.

Following the November 17th hearing, the Court issued an order permitting the parties to submit any supplemental briefing on any issue. *See* Order, ECF No. 33. ST Shipping filed a supplement brief in which it argued that a debt is only found within this District only if a creditor

3

— here, SPACE — could enforce that debt here. Garnishee's Supplemental Br., ECF No. 37 at 1-4. Additionally, ST Shipping argued that, in order for SPACE to enforce a debt in the District, there must be personal jurisdiction over ST Shipping and, as a foreign corporation, ST Shipping argues SPACE would be unable to do so. *Id.* at 4-5.

SPACE adopted ST Shipping's jurisdictional arguments in their filing. *See* Defs. Objection 3, ECF No. 36. Additionally, they argued that the award should be vacated or reduced based on developments in the London arbitration between PSARA and SPACE. *Id.* at 1-2. Specifically, SPACE argued that the arbitrators found many of the losses related to the condition of the vessel not yet ripe, and that PSARA should have notified the Court of this decision when filing the Verified Complaint. *Id.* at 2-3. They argue that, by not informing the Court, "Plaintiff has thus breached the heightened duty of disclosure imposed in rule B attachment actions." *Id.* at 3. Alternatively, they argue that the arbitration decision requires substantial reduction in the amount of the attachment: from $19,604,197 to $436,376.00. *Id.* at 3-5.

PSARA argued that ST Shipping's debt has its situs in Connecticut because ST Shipping has maintained an office in Stamford, Connecticut. Pl. Supplemental Br., ECF No. 38 at 1-4. Additionally, they argue that the arbitration decision highlighted by SPACE "does not contain findings of fact or conclusion of law" and represented "how things appeared when the claim submission of Plaintiff was made" several weeks prior to the filing of the Verified Complaint in this case. *Id.* at 4. PSARA also submitted two declarations with several exhibits attached in further support their damage calculations. Decl. of Adamantios Adriotis, ECF No. 39 (detailing estimated costs of repairs and other figures regarding vessel's deterioration); Decl. of Jeremy Biggs, ECF No. 40 (detailing current posture of London arbitration).

II.     **Standard of Review**

Attachment in maritime or admiralty actions is governed by Rules B and E of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The Second Circuit has "interpreted Rule B to permit a plaintiff to obtain an order of attachment if it can show that: 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 493 (2d Cir. 2013) (internal citations and quotations omitted).

Once a writ of garnishment has been issued, "any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f). The plaintiff bears the burden of proving that each of the four requirements are met to justify attachment. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 212 (2d Cir. 2010).

When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights. *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009).

### III. Discussion

This case presents the question of whether a debt, owed by a foreign third party to a foreign defendant, is within the jurisdictional reach of the Court for the purposes of maritime attachment, merely because the third party maintains an office in Connecticut.

The parties do not appear to dispute that Plaintiff has a valid prima facie admiralty claim against Defendants.[1] Nor do they debate that the third and fourth prongs are met: Defendants are not present in the District, and the parties have not raised any clear bars to the attachment. ST Shipping, however, challenges this Court's jurisdiction to enter the garnishment. While it does not dispute they owe some sum of money to SPACE, ST Shipping argues that it is not subject to the *in personem* jurisdiction of this Court. Therefore, it essentially argues that PSARA has not proved the second prong necessary to justify garnishment: that Defendants' property — here, the debt owed SPACE by ST Shipping — is within the District. The Court agrees.

A.     **Property Within the District**

Maritime attachment has a long and storied history, and is used by admiralty courts to "first, gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006) (describing the history of maritime attachment). "One of the primary grounds for the historical development of Rule B attachments was that "[a] ship may be here today and gone tomorrow." *Jaldhi*, 585 F.3d at 70 (*quoting Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir.1982)). The purpose of attachment was to allow admiralty courts to extend jurisdiction to this inherently fleeting property, while the property was within the court's jurisdiction. *Aqua Stoli Shipping*, 460 F.3d at 443 ("Maritime parties are peripatetic, and their assets are often transitory. Thus, the traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to

---

[1] Defendants contest the amount claimed by Plaintiffs, arguing that at least part of that amount is the result of putative damage to the tanker which the arbitration panel in London found was not yet ripe. Defs. Objection at 1-3. Because the Court holds that the property is not found within the District of Connecticut, it does not address Defendants' argument regarding the amount of that property.

scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.").

Rule B codifies the longstanding practice in this Circuit of maritime attachment. *Aqua Stoli*, 460 F.3d at 437. It also extends the property that might be subject to maritime attachment to both tangible and intangible property. *Jaldhi*, 585 F.3d at 67. The Court, however, must still have jurisdiction over the property it seeks to attach. As the Second Circuit has noted: "The 'jurisdiction' at issue in a Rule B attachment proceeding is quasi in rem, rather than *in personam* or *in rem*. In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest." *Id.* at 69 n.12.

Therefore, the Court must determine whether the property at issue —the debt owed by ST Shipping to SPACE — is within this Court's territorial reach. The *situs* of intangible property has traditionally be seen as "fictional," but "where the debtor and creditor are within the jurisdiction of a court, that court has constitutional power to deal with the debt." *Standard Oil Co. v. State of New Jersey*, 341 U.S. 428, 439 (1951); *see also Dorr-Oliver, Inc. v. Willett Associates*, 219 A.2d 718, 722 (Conn. 1966) ("In garnishment, it is the in personam jurisdiction over the garnishee which constitutes the seizure of the indebtedness insofar as there is, or can be, any seizure of such an intangible.").

Beginning with *Jaldhi*, the Second Circuit has recognized that maritime law should not be any different and held that Electronic Fund Transfers ("EFTs") were not attachable property within the meaning of Rule B, even if they passed through intermediary accounts in New York City. 585 F.3d at 71. The court concluded that EFTs are "in the temporary possession of an intermediary bank" and could be deemed defendant's property. *Id.* If they were not the defendant's property, then it followed that they were not within the reach of Rule B. *Id.*

Following *Jaldhi*, the Second Circuit affirmed this principle again in *Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70 (2d Cir. 2010), where a district court had attached funds before the Second Circuit's decision in *Jaldhi* prohibited the practice. 620 F.3d. at 73 (noting that plaintiff served process on eleven different banks through which it believed defendants might transfer funds). When the defendant sought transfer of the money, the bank then placed the funds in a "suspense account" in New York or Paris. *Id.* After *Jaldhi* was decided, the district court vacated the attachment, and the plaintiff appealed. *Id.*

The plaintiff argued that the fact that the bank operated a branch in New York was "sufficient to permit the District Court to exercise jurisdiction" over the defendant's account. *Id.* at 74. The Second Circuit rejected this approach. It applied New York law, which under the "separate entity rule" requires that "each branch of a bank be treated as a separate entity for attachment purposes." *Id.* at 74 (internal citations and quotations omitted). Under New York law, the "mere fact" that the bank had an office in New York did not mean that all the accounts outside of New York could be attached under Rule B. *Id.* (*quoting John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242, at *3 (S.D.N.Y. Sept. 15, 2009)) Therefore, the property was not within the jurisdiction of the court. *Id.*

Here, PSARA argues that defendants' intangible property is within the district because ST Shipping maintains an office in the State of Connecticut and therefore the debt owed to SPACE is present there. *Allied Maritime*, however, suggests two important requirements. First, it is not enough to merely operate an office within the jurisdiction of the Court. *See Allied Maritime*, 620 F.3d. at 74. Instead, the court must have jurisdiction over the third-party where the account is held. *Id.* Second, the Court should determine whether state law allows the Court to exercise that jurisdiction. *See China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F.

Supp. 2d 579, 604 (S.D.N.Y. 2012) (noting that personal jurisdiction over third-party garnishee was "essential element" for attachment); *Cf. Day v. Temple Drilling Co.,* 613 F. Supp. 194, 197 (S.D. Miss. 1985) ("This Court concludes that since it has personal jurisdiction over the garnishee/defendants, Gulf, Shell and Chevron, it also has jurisdiction over any indebtedness owed by the garnishee/defendants to Temple.").

PSARA argues that courts have rejected jurisdictional arguments like those raised by ST Shipping. It cites to *Engineering Equipment Co. v. SS SELENE*, 446 F. Supp. 706 (S.D.N.Y. 1978), to argue that "the jurisdiction of the court in Rule B cases does not depend on state law" and that, even after the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977), "the presence of defendants' property can provide a basis for jurisdiction." Pl. Supplemental Br. at 2-3 (*quoting SS SELENE*, 446 F. Supp. at 709).

However, it is not the Court's *in personam* jurisdiction over Defendants in this case that is at issue. Rather, it is whether the Court has jurisdiction over the third-party garnishees and, therefore, over the debt the garnishees owe Defendants. The Court in *SS Selene*, in language quoted by Plaintiff, explicitly noted that "[s]ince the Holt Defendants (the garnishees) are subject to our *in personam* jurisdiction, the debts are deemed to their situs within the district." Pl. Supplemental Br. at 2 (*quoting SS SELENE*, 446 F. Supp. at 708-09). Plaintiff points to no case where the Court lacked personal jurisdiction over a garnishee, nor does Plaintiff wrestle with the relevant Second Circuit caselaw addressed above that suggests merely operating an office within the district is not sufficient to locate property within the district.

As a result, the Court must determine whether it has personal jurisdiction over ST Shipping and must resolve that issue under Connecticut law. *Jaldhi,* 585 F.3d at 69-71 (applying

9

New York law where no maritime law existed); *Allied Maritime*, 620 F.3d at 74 (applying New York law to conclude that separate entity rule prevented attachment).

## B. Personal Jurisdiction Under Connecticut Law

According to the Complaint, ST Shipping is a foreign corporation, headquartered in Singapore, but registered to do business as a foreign corporation in Connecticut. Compl. ¶ 34. Therefore, jurisdiction over ST Shipping must be appropriate under Connecticut law, which requires a two-step inquiry: "federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant. . . . If jurisdiction is appropriate under the relevant statute, the court must then decide whether exercise of jurisdiction comports with due process." *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990) (interpreting CONN. GEN. STAT. ANN. § 52-59b); *see also Estate of Nunez-Polanco v. Boch Toyota, Inc.*, 339 F. Supp. 2d 381, 383 (D. Conn. 2004) (same); *Hamann v. Carpenter*, No. 3:16-CV-00501-VAB, 2017 WL 421646, at *1 (D. Conn. Jan. 31, 2017) ("The Court will address the question of whether it would offend due process to assert jurisdiction only after determining that jurisdiction is statutorily permissible.").

Connecticut law allows foreign corporations to register with the Secretary of State. CONN. GEN. STAT. ANN. § 33-929(f). Under this statute:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of

> independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

"[T]he Connecticut long-arm statutes do not confer jurisdiction over actions committed by a nonresident party against another nonresident." *Estate of Nunez-Polanco v. Boch Toyota*, Inc., 339 F. Supp. 2d 381, 383 (D. Conn. 2004) (*quoting Pomazi v. Health Indus. of Am.*, 869 F.Supp. 102, 104 (D.Conn.1994)); *see also Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prod., Inc.*, 821 F. Supp. 2d 498, 502 (D. Conn. 2010) ("To establish jurisdiction over a foreign corporation pursuant to section 33–929(f), a plaintiff must be 'a resident of this state' or 'a person having a usual place of business in this state.'").

None of the parties in this action are residents of Connecticut. SPACE Shipping is a foreign company organized under the laws of Malta. Compl. ¶ 4. As addressed above, while ST Shipping may maintain an office in Stamford, it is a foreign company headquartered in Singapore with its principal place of business abroad. PSARA is a corporation organized under the laws of the Republic of the Marshall Islands. Compl. ¶ 3.

Plaintiff has not addressed why Connecticut's foreign corporation long-arm statute would give this Court personal jurisdiction over ST Shipping for this case, instead merely arguing that ST Shipping's office in Stamford establishes personal jurisdiction. Even assuming, however, that a foreign corporation could be sued by a foreign plaintiff under CONN. GEN. STAT. ANN. § 33-929(f), the Plaintiff points to no contract that has ties to the State of Connecticut, nor do they allege that the debt owed by ST Shipping arises from the solicitation of business by mail, the production and manufacture or distribution of goods within Connecticut, or from any tortious conduct by ST. Shipping. In fact, Plaintiff has not addressed the satisfaction of any of the requisites of the Court's jurisdiction over ST Shipping at all under § 33-929(f).

11

The Court therefore may not exercise personal jurisdiction over ST Shipping. It follows that any of SPACE's intangible property held by ST Shipping is outside the jurisdiction of this Court. Given these considerations, the Court holds that the debt owed to SPACE Shipping based on the arbitration in London is not within the District.

## CONCLUSION

ST Shipping's Motion to Release Maritime Garnishment is **GRANTED**. The attachment previously ordered is **VACATED** under Rule(E)(4)(f) of the Supplement Rules of Civil Procedure.

SO ORDERED at Bridgeport, Connecticut, this 20th day of November 2017.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge