UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PSARA ENERGY, LTD., | : | |
| | : | Civil No. 3:17-CV-01811 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SPACE SHIPPING, LTD. and | : | |
| GEDEN HOLDINGS, LTD. | : | |
| | : | |
| Defendants | : | NOVEMBER 24, 2017 |

**ANSWER OF GARNISHEE ST SHIPPING & TRANSPORT PTE LTD.**

Pursuant to Rule B(3)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, non-party garnishee ST Shipping & Transport Pte. Ltd. ("ST Shipping PTE"), by its undersigned counsel, responds as follows to the allegations in the Original Verified Complaint and Request for Issuance of Process of Maritime Attachment and Garnishment dated October 30, 2017 [ECF No. 1] (the "Complaint"), filed by plaintiff Psara Energy, Ltd.  To the extent that the headings, subheadings, and other unnumbered statements appearing throughout the body of the Complaint may contain any factual allegations, ST Shipping is not obligated to respond to such allegations, but if required to do so, ST Shipping PTE denies such allegations.

**AS TO "PARTIES, JURISDICTION, AND VENUE"**

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S. C. § 1333.

**ANSWER**:  Paragraph 1 of the Complaint states a legal conclusion as to which no response is required.

2. Plaintiff brings this action to obtain security for maritime claims pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "Rule B"). Plaintiff is seeking an order authorizing process of attachment over property belonging to Defendants, including but not limited to: a London maritime arbitration award and the funds payable thereunder, which SPACE seeks to recognize and enforce against various parties in the District including ST SHIPPING & TRANSPORT PTE LTD. (hereinafter "ST Shipping PTE" or "Garnishee"), by means of a Petition to Confirm Arbitration Award (**Exhibit 1** attached hereto); and any credits or effects of Defendant in the hands of the Garnishee, including but not limited to accounts, debts, dividends, contractual rights, indemnity claims, choses in action, and any intangible property whatsoever of Defendant in the hands of Garnishees up to the amount claimed hereunder.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, except admits that Exhibit 1 of the Complaint is a copy, without exhibits, of a *Petition to Confirm Arbitration Award* filed by Space Shipping Ltd. ("Space") against, *inter alia*, ST Shipping PTE in the United States District Court for the District of Connecticut (the "District").

3. At all times material hereto Plaintiff PSARA was a corporation organized under the laws of the Republic of the Marshall Islands and the registered owner of the Motor Tanker CV STEALTH (hereinafter the "CV STEALTH"), a crude oil tanker vessel registered in Malta.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint.

4. At all times material hereto Defendant SPACE, was, and is, a foreign company organized under the laws of Malta and the bareboat charterer of the CV STEALTH under a bareboat charter party contract dated February 23, 2010 (hereinafter "the bareboat charter"). A copy of the bareboat charter is attached hereto as **EXHIBIT 2.**

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint.

5. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 because this action arises from a maritime contract- *i.e.*, a charter party in respect of unpaid bareboat charter hire and the damage to the hull and machinery of the CV STEALTH that has caused her condition to be so gravely deteriorated that she cannot be redelivered to Plaintiff in the same condition as on delivery minus fair wear and tear not affecting class as provided under Part II, Clause 3 of the charter party.

**ANSWER**: Paragraph 5 of the Complaint states a legal conclusion as to which no response is required. To the extent a response is required, ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6. Venue is proper in this District because the Garnishee is located and can be found in this District. Defendants cannot be found in this District within the meaning of Rule B.

**ANSWER**: Paragraph 6 of the Complaint states a legal conclusion as to which no response is required. To the extent a response is required, ST Shipping PTE admits that it has an office in the District, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 of the Complaint.

7. On February 23, 2010, Plaintiff, as owner of the CV STEALTH, and Defendant SPACE, as bareboat charterer, entered into a contract in an amended BARECON 2001 charter party form. GEDEN, the parent company of SPACE, guaranteed its performance.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint.

### AS TO "THE CLAIM OF PSARA AGAINST SPACE AND GEDEN"

8. The CV STEALTH was employed by SPACE as a vessel under charter by demise is customarily employed, with the demised charterer providing for the crewing of the vessel, her insurances, her technical management, drydocking and repairing, supplying and provisioning and generally providing all services and things for the bareboat charterer's own commercial exploitation of the vessel. On or about April 10, 2014, SPACE, as demised charterers, time chartered the vessel to ST Shipping PTE for approximately twelve (12) months at the hire rate of $14,500 per day.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint, except admits that on or about April 10, 2014, SPACE time chartered the vessel to ST Shipping PTE for a hire rate of $14,500 per day.

9. On September 4, 2014, ST Shipping PTE sub-chartered the vessel to AS CAPITAL, LTD. (hereinafter "AS CAPITAL") under a voyage charter, for the carriage of a

cargo of Venezuelan crude oil as follows: "MINIMUM 50,000 MT CHOPT UP TO FULL CARGO" of "CRUDE OIL, MAX 2 GRADES" from "1-2 SP VENEZUELA, EXCLUDING LAKE MARACAIBO INTENTION GUARANGO (PUERTA [sic] LA CRUZ), VENEZUELA" to a range of ports in AS Capital's option."

**ANSWER**:  ST Shipping PTE admits the allegations in paragraph 9 of the Complaint.

10. It was the stated intention of AS CAPITAL, and thus ST Shipping PTE, as head charterer, to carry a cargo of up to 400,000 barrels of Venezuelan crude oil from Puerto La Cruz for discharge at a United States crude oil terminal.

**ANSWER**:  ST Shipping PTE denies the allegations in paragraph 10 of the Complaint as stated, but admits that it was the stated intention of AS CAPITAL to carry a cargo of up to 400,000 barrels of Venezuelan crude oil from Puerto La Cruz for discharge at a United States oil terminal. admits the allegations in paragraph 10 of the Complaint.

11. ST Shipping PTE, in an email dated September 4, 2014, ordered the Vessel to sail to Puerto La Cruz, Venezuela to load cargo at the PDVSA (Petr6leos de Venezuela, S.A., the Venezuelan state-owned oil and natural gas company) Terminal.

**ANSWER**:  ST Shipping PTE denies the allegations as stated, but admits that on or about September 4, 2014, ST Shipping PTE ordered the Vessel to sail toward Puerto La Cruz, Venezuela.

12. Pursuant to the instructions sent by ST Shipping PTE to the Vessel, she proceeded to Puerto La Cruz, arriving there on or about September 5, 2014.

**ANSWER**:  ST Shipping PTE admits the allegations in paragraph 12 of the Complaint.

13. At Puerto La Cruz, the vessel was directed by the agent of AS CAPITAL to be ready to proceed to berth to load a cargo of crude oil for the account of the voyage charterer AS CAPITAL.  However, unbeknownst to Plaintiff, berthing instructions from the supplier of the cargo PDVSA were being delayed and the vessel was not being called to berth.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14. On or about September 13, 2014, the Vessel was boarded by Venezuelan port authorities, members of the Venezuelan National Guard, government lawyers, security officers from PDVSA, the Harbor Master and customs officers. They informed the vessel's master that the purported loading authorization document was not an official PDVSA document.

**ANSWER**:  ST Shipping PTE admits the allegations in paragraph 14 of the Complaint.

15.     The Vessel was detained in Venezuela at that time, purportedly for being unauthorized to lift a cargo of crude oil from Venezuela and being employed to lift a cargo stolen from PDVSA. She continues to be at Puerto La Cruz up to the filing of this Complaint and, to Plaintiffs knowledge, she has not been cleared to depart, although SPACE contends that the Venezuelan authorities are no longer detaining the vessel since October 3, 2017.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, except admits that the Vessel was detained in Venezuela on or about September 13, 2014.

16.     After several months following the vessel's detention by the Venezuelan government authorities, SPACE altogether ceased paying the agreed daily charter hire, as it was obliged to do until the redelivery of the vessel, leaving PSARA with no choice but to commence arbitration in London to compel SPACE to pay charter hire.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.     Owners were successful in the arbitration in London and they recovered an award for unpaid hire in the amount of $5,272,100.90 together with interest and costs, including legal costs and fees. A copy of the arbitration award recovered by Owners is hereto attached as EXHIBIT 3.

**ANSWER**:  ST Shipping PTE admits the allegations in paragraph 17 of the Complaint.

18.     In seeking enforcement of their arbitration award, and to collect amounts becoming due after its issuance, Owners commenced several proceedings against business entities which are successor corporations of SPACE and GEDEN, its performance guarantor, which eventually resulted in a settlement agreement.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.     The settlement agreement, dated December 8, 2016, provided for payment of not only the amount of the award - save for costs of the arbitration which remain to be taxed by the arbitrators- but also of hires up to December 31, 2016.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

20. To allow SPACE and GEDEN an opportunity to obtain an arbitration award against ST Shipping PTE of indemnity for sums they paid to Owners in respect of bareboat hires during the detention of the vessel, Owners under the December 8, 2016 agreement, agreed to give SPACE and GEDEN a respite for the hires accruing for the months of January through June 2017. SPACE and GEDEN agreed to deposit in escrow an amount equal to the said outstanding hires from the recovery of the indemnity. SPACE and GEDEN also agreed that if the CV STEALTH continued to remain under detention after June 2017, payment of hire would resume and specifically provided under clause 8(7) of the December 8, 2016 agreement:

> After the said 6-month period has passed (January 2017 through June 2017), if the vessel has not been redelivered to Owners in the meantime, Charterers shall be required to resume timely payment of monthly charter hire falling due thereafter up to the end of 2017. *While such BBC hire continues to be paid in a timely manner Owners shall not pursue any remedies to enforce and/or secure their claims for unpaid charter hire, for the Janua1y 2017-June 2017 period which remains unpaid at that time,* unless the Charterers fail to comply with the Assignment or fail (after due notice) to diligently pursue their indemnity claims against ST Shipping/Glencore. (*emphases added*).

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21. On October 1, 2017, the October installment of bareboat charter hire, which was payable in advance (as all monthly installments of hire are), fell due but neither SPACE or GEDEN have paid to date, despite payment being duly demanded.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22. SPACE and GEDEN having failed to make the October hire payment as contemplated under the December 8, 2016 settlement agreement, leaves Owners free to pursue any remedies to enforce and/or secure their claims for unpaid hire. Owners are about to submit a claim in the London arbitration, which has continual jurisdiction over the claims for the January through June 2017 unpaid hires, interest, legal costs, and costs of the London arbitration, and any other claims arising under the bareboat charter.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23. On or about October 4, 2017, Owners received a notice from SPACE through chartering broker channels, advising that the Venezuelan government released the vessel from

detention - after it was detained in Venezuela for some 36 months - and they are arranging to make redelivery of the vessel to Owners within approximately thirty (30) days. Redelivery of the vessel is imminent.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24. Without prejudice to claims that Owners have submitted to the hull and war risks underwriters of the Vessel, Owners contend the vessel has become a constructive total loss under the respective policies of insurance by reason of her three (3) year-long detention by the Venezuelan government, and/or the consequences of such detention to the physical condition of the vessel. Owners anticipate, based on information received, that the vessel has suffered extensive damage and deterioration during said detention, due to her forced idleness for a period of three (3) years and the lack of minimally adequate, rudimentary maintenance, which will cost an extremely large sum to restore the CV STEALTH to the state and condition she must be restored to trade as a seaworthy tanker vessel once again.

**ANSWER**: ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25. Based on information regarding the present condition of the CV STEALTH, which Plaintiff has been able to obtain while the vessel remains un-redelivered and still under the control of SPACE, the vessel is out of class, uninsurable and will require at a minimum, extensive restorative repair work that will include the following items:
   1) complete overhauling of all machinery and equipment and extensive renewals of major and miscellaneous spares;
   2) extensive piping system renewals, overhauling of valves, sensors and gauges;
   3) full hull and deck blasting and extensive steel renewals and recoating;
   4) extensive renewal of outfitting, supports, ladders, etc.;
   5) extensive steel renewals in cargo and ballast tanks;
   6) re-tubing of auxiliary boilers and exhaust gas boilers;
   7) overhauling and renewal of cargo system, cargo piping, cargo monitoring and cargo equipment and machinery;
   8) steam lines and heating coils renewals;
   9) deck machinery overhauling and renewal including cranes and their hydraulic systems;
   10) electrical, electronics and automation system service, repair and renewal;
   11) extensive rewiring;
   12) bridge navigation and communication equipment service and renewals;
   13) overhauling, repairs and renewal of steering and shafting system;
   14) overhauling, service, repair and renewals of all safety equipment, firefighting systems and appliances, lifesaving equipment etc.;

   15)  fitting of ballast water treatment system.

Plaintiff reasonably believes that the cost of repairs to the vessel, if she is reparable, and restoring her to the redelivery condition required under the charter party, will exceed the sum of $15,000,000 as estimated in the foregoing.

   **ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

   26.  The cost of the repairs estimated in the foregoing do not include the time that will be required to effect the repairs, which is estimated to be approximately 5 months. At the current charter party rate, it is estimated to be 151 days x $ 10,275 = $1,551,525.

   **ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

   27.  Redelivery of the vessel in such a deteriorated state of extensive disrepair is a material breach of the bareboat charter, which requires under Part II, clause 15 that, " . . . the Vessel shall be redelivered to the Owners in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted."

   **ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

   28.  The amount of outstanding bareboat charter hire owed by Defendants to Plaintiff for the detention of the vessel beyond her agreed redelivery date is, in accordance with charter party clause 15, the daily basic rate of $9,750 plus 10%, or the daily market rate over the period of the detention; whichever is higher. The higher of the two alternative daily rates is the former, *i.e.* $10,275.

   **ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

   29.  Defendants have failed to pay Plaintiff the agreed hire rate over the following months of 2017: January; February; March; April; May; June; and October, *i.e.* a total of 212 days - which, under charter party Part II clause 11, is payable in advance. Accordingly, SPACE is indebted to PSARA in respect of unpaid hire in the sum of $2,178,300.

   **ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint.

   30.  The charter party provides under clause 11(f) that unpaid sums under the charter carry interest at the rate of the 2% over the U.S. $ LIBOR rate, which Plaintiff calculates to be

- 8 -

$45,381.00 over the unpaid hire amount for the past 10 months. (2% Over LIBOR is roughly estimated as 2.5% per annum). The interest Plaintiff anticipates will run on unpaid hire during the 5-month anticipated repair period is estimated, at the same rate, to be $29,091.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint.

31.     Plaintiff was awarded costs for the London maritime arbitration under the award already made by the arbitrators, which include fees for their legal representation in the proceedings.  Plaintiff anticipates that the costs already incurred in the arbitration, that will be taxed against SPACE, will amount to approximately $500,000. Plaintiff also anticipates submitting further claims in the London arbitration in respect of the charter hire amounts remaining unpaid; its claim for repairs to the vessel; and its unpaid legal costs, additionally totaling the sum of$300,000. Thus, Plaintiffs claim for legal costs in the London arbitration proceedings are estimated to total $800,000.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint.

## AS TO "APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B"

32.     The Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. See Doc. 4, Attorney Affidavit of George Gaitas. Nevertheless, Defendant SPACE has tangible or intangible personal property within the District in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

**ANSWER**:  Paragraph 32 of the Complaint states legal conclusions as to which no response is required.  To the extent a response is required, ST Shipping PTE denies the allegations in paragraph 32.

33.     More particularly, ST Shipping PTE is an obligor of SPACE, as it is indebted to SPACE in the sum of $7,325,258.42 under the Fourth Partial Final Award made in favor of SPACE against ST Shipping PTE. *See* EXHIBIT 1 at ¶¶ 52-56.

**ANSWER**:  ST Shipping PTE denies paragraph 33 of the Complaint as stated, but admits that arbitrator Bruce Harris entered a Fourth Partial Final Award in favor of Space and against ST Shipping PTE on May 25, 2017, which speaks for itself.

- 9 -

34. According to motion papers filed in Civil Action No. 3:17-cv-01567-WWE on behalf of ST Shipping PTE by its attorneys, ST Shipping PTE was, and is present in the District. By ST Shipping PTE's own admission, "ST Shipping PTE is a foreign corporation, organized under the laws of Singapore. (Pet. ¶ 4). ST Shipping PTE is registered to do business in Connecticut with the Connecticut Secretary of State." *See* Civil Action No. 3:17-cv-01567-WWE, Doc. 19-1, at p. 12. A copy is hereto attached as **EXHIBIT 4.**

**ANSWER**: Paragraph 34 of the Complaint states legal conclusions as to which no response is required. To the extent a response is required, ST Shipping PTE admits that it filed motion papers in Civil Action No. 3:17-cv-01567-WWE, a copy of which were attached to the Complaint as Exhibit 4.

35. At all times material hereto, ST Shipping PTE, with specific reference to the conclusion of the time charter dated April I 0, 2014 between itself and SPACE, identified itself in the correspondence as "ST Shipping and Transport Pte Ltd. Stamford Branch: Three Stamford Plaza, 301 Tresser Boulevard, Stamford, Connecticut 06901-3244." Copies of such correspondence are hereto attached as EXHIBIT 5.

**ANSWER**: ST Shipping PTE denies paragraph 35 of the Complaint as stated, but admits that ST Shipping PTE has an office at 301 Tresser Boulevard, Stamford, Connecticut 06901-3244.

36. The obligation of ST Shipping PTE to pay the arbitration award to SPACE may be attached by process of maritime attachment and garnishment in the hands of ST Shipping PTE as security for the claims of Plaintiff PSARA in London maritime arbitration, which are otherwise not secured.

**ANSWER**: Paragraph 36 of the Complaint states legal conclusions as to which no response is required. To the extent a response is required, ST Shipping PTE denies the allegations in paragraph 36.

37. Plaintiff has maritime claims against the Defendants arising out of a maritime contract, *i.e.* - the bareboat charter party with GEDEN and SPACE dated February 23, 2010.

**ANSWER**: Paragraph 37 of the Complaint states legal conclusions as to which no response is required.

38. Thus, Plaintiff calculates the total amount· of its claim in arbitration in respect of which it seeks security under this application as follows:

(a) Damages for the deteriorated condition of the vessel on redelivery . . . $15,000,000.00
(b) Unpaid Charter hire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,178,300.00
(c) Unpaid hire during repairs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$1,551,525.00
(d) Estimated interest on unpaid amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . $74,472.00
(e) Legal costs of the arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$800,000.00
**Total Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 19,604,297.00**

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Complaint.

39.     Accordingly, Plaintiff's total claim against Defendants for breach of the maritime contract totals $19,604,297.00.

**ANSWER**:  ST Shipping PTE denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.     Any obligation ST Shipping PTE owes to Space Shipping is not subject to attachment under Supplemental Rule B, because Space Shipping cannot obtain personal jurisdiction over ST Shipping PTE in the District to enforce any such obligation.

### SECOND AFFIRMATIVE DEFENSE

2.     The Complaint should be dismissed, and Psara's request to attach any of Space Shipping property in the hands of ST Shipping PTE, as garnishee, should be denied, under the doctrine of *forum non conveniens*.

### THIRD AFFIRMATIVE DEFENSE

3.     The Complaint should be dismissed, and the attachment of any Space Shipping property in the hands of ST Shipping PTE, as garnishee, should be denied pursuant to the

30230924v1

- 12 -

Court's equitable powers to vacate Supplemental Rule B attachments, as Psara has sufficient security for its claims against Space Shipping.

### FOURTH AFFIRMATIVE DEFENSE

4. The Complaint should be dismissed, and Psara's request to attach any of Space Shipping property in the hands of ST Shipping PTE, as garnishee, should be denied, because Psara's entitlement to any amounts owed under the Fourth Partial Award is subject to on-going proceedings in the High Court of Justice, Business and Property Courts, Commercial Court (Queen's Bench Division), in London, England, which court has jurisdiction over said dispute.

### FIFTH AFFIRMATIVE DEFENSE

5. ST Shipping PTE reserves the right to assert additional affirmative defense it may discover in due course.

Dated: November 24, 2017
New York, N.Y.

                            CURTIS, MALLET-PREVOST,
                               COLT & MOSLE LLP

 /s/    *Peter J. Behmke*
     Peter Behmke (phv02626)
     Michael P. Jones (phv09300)
101 Park Avenue
New York, New York, 10178
Tel.:  (212) 696-6000
Fax:  (212) 697-1559
Email:  pbehmke@curtis.com
         mjones@curtis.com

STOCKMAN O'CONNOR PLLC
    Simon I. Allentuch (ct21094)
10 Middle Street
Bridgeport, Connecticut 006604
Tel:  (203) 598-7585
Email:  sallentuch@stockmanocconnor.com

*Attorneys for ST Shipping & Transport Pte. Ltd.*

**CERTIFICATION**

I hereby certify that on November 24, 2017 a copy of the foregoing was filed electronically and served by mail on any counsel of record unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: November 24, 2017
New York, N.Y.

      /s/ *Peter J. Behmke*
      Peter J. Behmke (phv02626)
      Curtis, Mallet-Prevost, Colt & Mosle LLP
      101 Park Avenue
      New York, N.Y. 10178
      Tel:  (212) 696-6000
      Fax:  (212) 697-1559
      Email:  pbehmke@curtis.com

*Attorney for ST Shipping & Transport Pte. Ltd.*