UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------- X
PSARA ENERGY, LIMITED  :
 : Civil Case No. 3:17-CV-01811
Plaintiff  :
 :
-against-  : ADMIRALTY
 :
 :
SPACE SHIPPING, LTD. and  :
GEDEN HOLDINGS, LTD.  :
 :
Defendants  :
---------------------------------------- X

## DECLARATION OF JEREMY BIGGS IN SUPPORT OF MOTION TO STAY PENDING APPEAL

I, JEREMY BIGGS, pursuant to Section 1746 of Title 28 United States Code, hereby declare and say the following under the penalty of perjury:

1. I am an individual of sound mind, and have never been convicted of a crime of moral turpitude.

2. I am a qualified English solicitor and a partner in the firm of Ince & Co, LLP with offices at Aldgate Tower, 2 Leman Street, London E1 8QN.

3. I represent the owners of the Motor Tanker CV STEALTH which is owned by Psara Energy Limited in claims brought in London arbitration against Space Shipping Limited.

1

4.  I submit this Declaration in support of the motion of Psara Energy Limited to stay the U.S. District Court's Order during the pendency of the Appeal of Psara Energy, Limited.

5.  I have had an opportunity to read through a document identified as Doc. 53, containing the Opposition of ST Shipping & Transport, Pte. Ltd to the motion of Psara Energy Limited for a stay pending appeal and I have had the opportunity to read through the declarations of Mr. Peter Behmke and attached exhibits, respectively 53-1, 58-2, and 58-3; and Mr. Henry Mills-Webb and attached exhibits, respectively Doc 53-4, 53-5, and 53-6.

6.  With regard to what Mr. Henry Mills-Webb and Mr. Peter Behmke state in their respective declarations, I confirm that my law firm has agreed to accept service of the "stakeholder proceedings" before the High Court in London. My law firm is already acting for Psara Energy Limited as their English solicitors in respect of this dispute, both in London arbitration proceedings and English Court proceedings against Space Shipping Ltd. However, agreeing to accept service of proceedings does not amount to an endorsement of same or any kind of concession in relation to the claims the Owners of the CV STEALTH have against Geden Holdings, Ltd. and Space Shipping, Ltd. It simply dispenses with the need for ST Shipping to serve the proceedings overseas against Psara Energy Limited which would have caused considerable delay.

7.  With regard to the suggestion of Mr. Behmke that the deposit of the funds by Glencore, Plc. represent security for the claims that Psara Energy Limited have against Space Shipping Ltd., I don't agree with this. If these funds represented unqualified and

unconditional security for Psara Energy Limited's claims they would be freely available to Psara Energy Limited as a source of satisfaction of its arbitration awards, issued and expected, which they are not as there is a competing claim for the same funds by Space Shipping Ltd. The commencement of stakeholder proceedings was just a self-protecting precautionary move which was not solicited by Psara Energy Limited or requested on its behalf and does not provide Psara Energy Limited with proper security unless and until the High Court determines the stakeholder proceedings in Psara Energy Limited's favour.

8. I note that in its opposition to stay the appeal of the Court's order in this action Mr. Behmke argues that the claims of Psara Energy Limited are not at great risk of being left unpaid and hence, Psara Energy Limited is not at risk of sustaining irreparable harm.Doc. 53b pp. 7-13. Having been involved in the litigation of these claims for several years, I would beg to differ with him.

9. To the best of my knowledge Space Shipping Ltd. is an SPV (a "special purpose vehicle") owned 100% by Geden Holdings, Ltd.

10. Space Shipping Ltd. does not own any fixed assets.

11. On numerous occasions Space Shipping Ltd. has defaulted on its obligations to the owners of the CV STEALTH leaving payments in arrears in the millions of U.S. dollars. In order to collect unpaid hire in the past Psara Energy Limited was forced to resort to the attachment of successor corporation vessels through judicial proceedings, the last one, of several, being in *Psara Energy, Ltd. v Space Shipping, Ltd., et al*, in the United States District Court for the Eastern District of Pennsylvania, 2:2:16-cv-04840-WB. In that particular action, the unpaid hire at the time of filing of suit stood at

US$2,819,398.71. That action was compromised and the full amount of the demand was eventually paid to Psara Energy Limited.

12. Furthermore, at present there is outstanding hire due and owing from Space Shipping Ltd for January to June 2017 and November 2017 which Space Shipping Ltd has failed and/or refused to pay.

13. Furthermore, far from being a reliable performance guarantor, Geden Holdings, Ltd. is a Maltese corporation which, according to Maltese judicial records, is in the process of being wound up.

14. I have had occasions to handle other arbitration and court cases against Geden Holdings, Ltd, and I can advise that my law firm obtained an arbitration award, against an SPV wholly owned by Geden Holdings Ltd, and a judgment against Geden Holdings Ltd itself on its performance guarantee in the amount of US$3,311,159.06 which still remains outstanding and unpaid. A copy of the judgment against Geden Holdings Ltd is attached to this declaration as EXHIBIT A.

15. Against this record of sustained failure to perform by Geden Holdings Ltd and the SPVs it controls, Psara Energy Limited is facing the redelivery of the CV STEALTH in a significantly deteriorated condition with the repair estimates and consequent claims likely to exceed US. $15,000,000. The dilapidated condition of the vessel is due to Space Shipping's failure to maintain and repair the vessel while in their custody, possession and control as bareboat charterer.

16. The foregoing is but a bare outline of the facts that should be taken into account in assessing the risk and the need of Psara Energy Limited for security.

4

Pursuant to Section 1746 of Title 28 United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

London, England

November 28, 2017

Respectfully submitted,

By: _____
Jeremy Biggs

# EXHIBIT A

Case No: CL-2017-000200

**Neutral Citation Number: [2017] EWHC 2193 (comm)**
**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

7 Rolls Building
Fetter Lane
London
EC4A 1NL

Friday, 28 July 2017

BEFORE:

**SIMON BRYAN QC**
(Sitting as a Deputy Judge of the High Court)

----------------------

BETWEEN:

**ECLIPSE LIQUIDITY INC**

Claimant

- and -

**GEDEN HOLDINGS LIMITED**

Defendant

----------------------

**MR JAMES WATTHEY** (instructed by Ince & Co LLP) appeared on behalf of the Claimant
The Defendant did not attend and was not represented

---------------------------------------

**APPROVED JUDGMENT**

---------------------------------------

Digital Transcript of WordWave International Ltd trading as DTI
8th Floor, 165 Fleet Street, London, EC4A 2DY
Tel No: 020 7404 1400  Fax No: 020 7404 1424
Web: www.dtiglobal.com      Email: courttranscripts@dtiglobal.eu
(Official Shorthand Writers to the Court)

*This Transcript is Crown Copyright.  It may not be reproduced in whole or in part other than in accordance with relevant licence or with the express consent of the Authority.  All rights are reserved.*

*If this transcript is to be reported or published, there is a requirement to ensure that no reporting restriction will be breached. This is particularly important in relation to any case involving a sexual offence, where the victim is guaranteed lifetime anonymity (Sexual Offences (Amendment) Act 1992), or where an order has been made in relation to a young person.*

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

1. THE DEPUTY JUDGE: This is an application for summary judgment under a guarantee that is brought before me today by the Claimant, Eclipse Liquidity Inc against Geden Holdings Limited. Geden Holdings Limited, as I shall come on to, have been made aware of this hearing. The original demand was made to them under the guarantee, they were aware of the commencement of these proceedings, of this application and of the hearing today, including when it was to take place and the hearing bundle and associated skeleton arguments. They have not appeared before me this morning.

2. However, the Claimant wishes the matter to proceed today by way of summary judgment as opposed to a default judgment. I have heard full written and oral argument before me. It seems to me to be appropriate that I do deal with this matter today by way of summary judgment and I will now proceed to do so in terms of my judgment.

3. The background to this matter is that the Claimant was and is the registered owner of the vessel the MT Avor ("the Vessel"). On around 27 May 2010 the Claimant entered into a bare boat charterparty with the Defendant or the Defendant's nominee, guaranteed by the Defendant, for the Vessel for a period of five years, plus 30 days' more or less at charterer's option ("the Charterparty"). On about 25 June 2010, the Defendant nominated Avor Navigation Limited ("the Charterer") as the Charterer under the Charterparty. At the time of that nomination and pursuant to the requirements to do so in box 4, part 1 of the Charterparty, the Defendant provided the Claimant with a performance guarantee dated 27 May 2010 ("the Guarantee").

4. Pursuant to the Guarantee the Defendant guaranteed the Charterer's obligations under the Charterparty, more particularly to:

> "... unconditionally and irrevocably guarantee **as primary obligor on first demand** the full and timely performance by the Charterer of all its obligations under the [Charterparty] including but not limited to the punctual payment of the hire **and/or the purchase price of the vessel MT Avor** providing the Charterer with sufficient funds to fulfil the [Charterparty] due and punctual payment to you of all amounts (if any)

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

> owing by the Charterer under or pursuant to the [Charterparty]. Upon receipt your (sic) first written demand stating -
> 
> <u>(i)</u> that the claimed amount is due to you and remains unpaid for a period of seven (7) calendar days from the due date <u>and</u>
> 
> <u>(ii)</u> copies of the hire statement for the relevant period,
> 
> we especially undertake to make any payment which was due to you under the above mentioned [Charterparty] but has not been paid on the due date by the Charterers to you to your account as specified in the [Charterparty]. Such demand is to specify the amount overdue and the date it was due."
> 
> (Emphasis added)

5. The Guarantee further provided:

   > "In the event of any dispute between you and the Charterer in relation to -
   > (1) whether the Charterers shall be liable to pay the sum to you; and
   > (2) consequently whether you shall have the right to demand payment from us;
   > and such dispute shall have been submitted either by the Charterers or by you to Arbitration in accordance with clause 30 part II of the [Charterparty] within seven (7) calendar days from the Charterers' receipt of your demand for repayment, **then we shall be entitled to withhold and defer payment until the awards** (sic) **is published. We shall not be obliged to make any payment to you unless the judgment orders the Charterers to make repayment**. If the **Charterers fail to honor the judgment within seven (7) days after that the final judgment had been rendered in the proceedings then we shall pay to you to the extent the judgment orders**."
   > (Emphasis added)

6. I should say the Guarantee also provided that it was governed by, and was to be construed in accordance with, the laws of England and the Defendant agreed to submit to the non-exclusive jurisdiction of the English court.

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

7.  So it will be seen that within that Guarantee the possibility is contemplated not only of charter hire payments but also a put option to purchase the Vessel.  On around 13 April 2015, the Claimant did indeed exercise its put option under an additional clause 13 of the Charterparty, ie, its right to sell the Vessel to the Charterer for a price of sum US$ 51,500,000.

8.  There was then a dispute which arose between the parties primarily as to whether the Charterer had failed to purchase the Vessel in breach of its obligations under the Charterparty and whether the Charterer had a counterclaim for, amongst other matters, loss of profit relating to the Claimant's failure to permit the Charterer to perform a final voyage.

9.  That dispute between the Claimant and the Charterer was submitted to LMAA arbitration in accordance with clause 30 part 2 of the Charterparty.  A hearing was conducted before a fully constituted LMAA tribunal on 14 and 15 November 2016 in which both the Claimant and the Charterer participated.  The tribunal published its final award on 5 December 2016 ("the Final Award") in relation to the dispute between the Claimant and the Charterer.

10. As set out in the Final Award, the tribunal held firstly that after set-off, the Claimant's claim against the Charterer succeeded in the amount of US$ 3,882,154.90, and secondly that the Charterer was liable to pay the Claimant the sum "forthwith" together with compound interest "at the rate of 4.5 per cent per annum compounded at 3 monthly rests from 18 September 2015 until the date of payment".  The Charterer has failed to make payment of the sums due to the Claimant pursuant to the Final Award within seven calendar days of the publication of the Final Award or at all.

11. There was then a demand made on 2 February 2017 in accordance with the Guarantee, by the Claimant's solicitors, who are Ince & Co LLP, who served on the Defendant a demand for payment of the sum of US$ 3,882,154.90, plus compound interest as set out in the Final Award ("the Demand").  Following service of that Demand, the Defendant has not paid the sums owed by the Charterer to the Claimant pursuant to the Final Award, it is said, in breach therefore of those obligations, it has under the Guarantee.  The Claimant therefore claims in these proceedings as a debt and/or as

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

damages the sum of US$ 3,882,154.90 plus interest on that sum at 4.5 per cent per annum compounded at quarterly rests.

12. The matters I have just identified are dealt with and verified by a witness statement of Jeremy Biggs of 4 July 2017, who is a partner of Ince & Co and who has filed that witness statement in support of this application for summary judgment.

13. Just picking up the chronology of events, on 2 February 2017, Ince & Co, as I have said, served the Defendant with the Demand, together with a certified copy of the Final Award. It is verified in Mr Biggs' witness statement that following that Demand the Defendant did not pay the sums owed by the Charterer to the owner pursuant to the Final Award and it is asserted that that was in breach of its obligations under the Guarantee.

14. The Claimant therefore issued a claim form with supporting documentation, including Particulars of Claim, and they did so on 27 March 2017. On 12 April 2017, the claim form and supporting documentation was served on the Defendant by a Court Marshall of the Maltese courts at the Defendant's registered address at 85 St John Street, Valletta, Malta. The documents were received and signed for on behalf of the Defendant by a Dr Mark Fenech of Fenech & Fenech Advocates and the same day a certificate of service was lodged to the court file in London by Ince & Co LLP.

15. Following service, the Defendant has never filed an acknowledgement of service nor a defence by or following the expiry of the 21-day time limit to do so on 3 May 2017. Against that background the Claimant then applied for summary judgment, which is the application that is before me. They did so on 4 July 2017. That application and supporting documentation was sent to the Defendant on 5 July 2017 by email, both to the email address in Turkey and also with a letter. There was no response to that application in terms of responsive evidence, or indeed any response.

16. The notice of the fixing of the application was given on 20 July 2017 by email and by registered post to the Defendant, and documentary material which evidenced that is in the bundle before me. Turning then to the merits of this application for summary judgment, those provisions are well-known. It is under CPR 24.2 which provides that:

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

> "The court may give summary judgment against a ... defendant on the whole of the claim or on a particular issue if -
>
> (a) it considers that -
>
> ...
>
> (ii) that the defendant has no real prospect of successfully defending the claim or issue; and
>
> (b) there is no other compelling reason why the case or issue should be disposed of at trial."

17. It is well-established that the requirement that the defendant has no real prospect of success means that the defendant does not have a real, as opposed to fanciful, prospect of success.

18. As I say, in the present case no response still less any defence has been identified by the Defendant to the claim under the Guarantee.  It seems to me that this is indeed, as characterised by the Claimant, a straightforward claim on a performance guarantee under which the Defendant has guaranteed the Claimant's obligations as a primary obligor.  Those obligations, as the Guarantee makes clear, include the Charterer's obligation to pay the purchase price of the Vessel MT Avor.  Equally, I am satisfied that the Final Award made by the tribunal relates to the Charterer's breach of this obligation.

19. It will have been noted that in terms of the express terms of the Guarantee, the operative paragraph in the context of an arbitration provides that the Defendant, that is the guarantor, shall be entitled to withhold and defer payment until the "awards is published". The reference to "awards" in the plural is clearly, it seems to me, a typographical error for "award".  That immediately precedes the following sentence, "We shall not be obligated to make any payment to you unless the judgment orders the Claimant to make repayment." The paragraph has to be construed as a whole, which as a matter of English law, is to be viewed objectively based on established principles of

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

contractual construction arising in cases such as *Rainy Sky*, *Arnold v Britton* and subsequent authorities and is to be given a commercial interpretation.

20. I am satisfied that the reference to "judgment" there is clearly intended to be a reference to the award and, in the context of this Guarantee in that paragraph, indeed no other construction would make any sense, still less any commercial sense. I am satisfied, therefore, that this Guarantee does respond to a final award. That Final Award has been made. The Demand has been validly made and I am satisfied that there is no real prospect of any successful defence in this case. Indeed, no defence has been identified. Mr Biggs, deposes, rightly in my view, that there is no real prospect of a successful defence in this case. I consider that, in such circumstances, this is an appropriate case for summary judgment.

21. I should say that the actual judgment figure is less than the figure claimed in the Particulars of Claim because of matters which had to be deducted from that and that, in the circumstances, I am satisfied firstly the Defendant has no real prospect of successfully defending the claim; and secondly, there is no other compelling reason why the case or issue should be disposed of at trial.

22. In those circumstances, I therefore grant judgment against the Defendant under CPR 24.2 and order that judgment be entered against the Defendant in the sum of US$ 2,991,842.40 plus interest of US$ 319,316.66 totalling US$ 3,311,159.06.

23. I also have before me an application for costs in relation to that which I will deal with in a moment. I have seen a draft order which includes a number of recitals which essentially identifies expressly on the face of the order a number of the matters that I have identified, which have been demonstrated by Mr Biggs in his witness statement and which I accept. It seems to me that in the circumstances of this case where there may be enforcement of the judgment out of the jurisdiction, in various jurisdictions, it is sensible and appropriate that there be such recitals making clear those matters, albeit that in any event my judgment addresses those matters.

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

24. Therefore, I make an order in the terms ordered.  I will, at this point, hear evidence now on costs and then I will summarily assess those costs.  That ends my judgment on summary judgment.

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com

**WordWave International Ltd trading as DTI** hereby certify that the above is an accurate and complete record of the proceedings or part thereof.

165 Fleet Street, London EC4A 2DY

Tel No: 020 7404 1400

Email: courttranscripts@DTIGlobal.eu

**This transcript has been approved by the Judge**

WordWave International Ltd trading as DTI
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400 | www.DTIGlobal.com